Ronald L. Pietz, by his next friend Colus Arlene Pietz, appellant, v. City of Oskaloosa et al., appellees.

No. 49486.

(Reported in 92 N.W.2d 577)

OCTOBER 14, 1958.

REHEARING DENIED DECEMBER 19, 1958.

F. M. Beatty, of Sigourney, and Life & Davis, of Oskaloosa, for appellant.

Hugh Ben McCoy and L. R. Carson, both of Oskaloosa, for appellees.

HAYS, J.—In the center of the public square in Oskaloosa, Iowa, is a public park owned and, through a Park Commission, maintained by the City of Oskaloosa. Within this park are trees, shrubs, etc., such as are ordinarily found therein. Along the border thereof, which abuts upon a public street, the City has placed parking meters at regularly marked intervals for use of the general public.

On April 3, 1956, plaintiff, a minor, while seated in a car, thus parked, was injured when a part of a tree standing in the park fell upon the car. This action is for the recovery of damages on account of injuries then sustained. Defendants are the City of Oskaloosa, the members of the City Council, the Oskaloosa Park Commission and its members. The petition is in three counts: Count I stated specific acts of negligence. Count II seeks recovery on the basis of a nuisance. Count III is based upon the doctrine of res ipsa loquitur. There was a trial to a jury, and at the close of *all* of the testimony the trial court sustained defendants' motion for a directed verdict and dismissed the petition. Plaintiff appeals.

Appellant assigns as errors the refusal of the trial court to submit to the jury Counts I, II and III respectively. Liability under each count is predicated upon section 389.12, Code of 1954, which is as follows: "They [cities and towns] shall have the care, supervision, and control of all public highways, streets, avenues, alleys, public squares, and commons within the city, and shall cause the same to be kept open and in repair and free from nuisances." Ownership and control of both the park and the street in question is conceded to be in the defendant City.

■ I. While recovery is sought primarily for a failure to maintain the street as is required by the statute above-quoted, so far as the City is concerned, and to maintain the park as to defendant Park Commission, the statute applies to parks, although not specifically designated therein as "Parks", and the duty and responsibility of the City is the same, be it a street or a park. Florey v. City of Burlington, 247 Iowa 316, 73 N.W.2d 770.

■■ That duty is well stated by this court in Abraham v. City of Sioux City, 218 Iowa 1068, 1070, 250 N.W. 461, 462, where it is said:

"This statute requires the city to exercise reasonable * * * care to maintain its streets in a safe condition for travel in the usual and ordinary modes of travel. However, a city is not required to keep its streets in a condition of absolute safety. It is only required to use ordinary * * * care to that end. It does not insure the safety of travelers upon its streets, nor is it

required to foresee and provide against every possible accident. It must have actual notice of the dangerous condition of a street or the condition must have existed for a sufficient time to enable the city to discover and repair the same, in the exercise of reasonable and ordinary care and diligence."

See also Florey v. City of Burlington, supra, 247 Iowa 316, 73 N.W.2d 770; Hall v. Town of Keota, 248 Iowa 131, 79 N.W.2d 784.

■ II. The duty and liability of the City would seem to be the same as to any faulty street condition, i.e., reasonable care and diligence. 25 Am. Jur., Highways, section 490, states the rule to be: "A municipal * * * corporation * * * is ordinarily liable for injuries to travelers resulting from the fall of a tree growing on or overhanging the street or way, * * * provided it had actual or constructive notice of the dangerous condition and failed to take proper measures to remove." See also 63 C. J. S., Municipal Corporations, section 818; Annotation, 14 A. L. R.2d 197.

In Cody v. City of North Adams, 265 Mass. 65, 164 N.E. 83, it was held the failure to remove a decayed tree does not constitute negligence in the absence of a showing that the decay was visible or known to the proper party. So far as the instant case is concerned we deem the tree in the park to come under the same rule as if it had stood in the street, and the duty of the city to be as above stated.

■ III. Count I charges negligence in the failure of the City to detect and remove from the park a decayed, rotten and dangerous tree. It presents primarily a question of fact.

The tree in question, an ash, was located in the park some twenty-five feet west of where the car was parked. It was some two feet in diameter at the butt and about fifty feet in height. All parties are agreed that it was a live tree and, on the day in question, an unusually strong wind was blowing. There is testimony of gusts up to sixty-five miles per hour. The entire top of the tree broke off at a place some twenty-eight feet above the ground, splitting the trunk down some fifteen feet before it broke clear. There is a dispute in the record as to whether or not the break was at a fork in the tree, but it is clear that after the break no limbs or branches remained on the stump left

standing. While it is disputed, there is testimony, based upon an examination of the broken part of the tree, that it was decayed at the place of the break and was deteriorated. There is not however a word of testimony that prior to the break this tree in any way appeared, or was thought to be, decayed or unsafe. It also appears in the record that in October or November 1955 a competent firm of tree repairmen, employed by the City, inspected the trees in the park including the one in question, which was found and reported to be in good condition.

Viewing this record in the light most favorable to appellant we are unable to find even a scintilla of evidence tending to show a breach of duty upon the part of defendants as is charged in Count I of the petition.

IV. Count II alleges that allowing the tree to remain standing in the park in its decayed condition constituted a nuisance. We think it clear that an unsafe tree, assuming such to be this case, does not come within our statutory definition of a nuisance. Sections 657.1 and 657.2, Code of 1954.

In Hall v. Town of Keota, supra, the following statement is quoted with approval from a Missouri case at page 142 of 248 Iowa, page 790 of 79 N.W.2d: "That to constitute a nuisance 'there must be a degree of danger (likely to result in damage) inherent in the thing itself, beyond that arising from mere failure to exercise ordinary care in its use'."

There is nothing inherently dangerous in a live tree standing in a park and, even assuming a failure upon the part of defendants in allowing this tree to remain standing, the most that one would have would be negligence and not a nuisance. Submission of Count II was properly refused.

V. Under Count III appellant relies upon the doctrine of res ipsa loquitur. The ingredients of this doctrine are clear but the application of the rule under any given state of facts is often difficult.

For the doctrine of res ipsa loquitur to apply two factors are essential: (1) The instrumentality causing the injury must be under the exclusive control and management of the defendant, and (2) the occurrence is such that in the ordinary course of things it would not have happened if defendant had

used reasonable care in the use of the instrumentality. Where these two factors are present, the happening of an injury allows but does not compel an inference that defendant was negligent. Eaves v. City of Ottumwa, 240 Iowa 956, 38 N.W.2d 761, 11 A. L. R.2d 1164; Young v. Marlas, 243 Iowa 367, 51 N.W.2d 443; Shinofield v. Curtis, 245 Iowa 1352, 66 N.W.2d 465, 50 A. L. R.2d 964.

It is conceded by all parties that the instrumentality, the tree, was under the exclusive control and management of the city.

As to the second factor a different situation exists. It cannot be said that trees do not break and fall except when there is negligence upon the part of the one having control thereof. Trees live and grow to considerable height and size and are, year in and year out, naturally exposed to the elements, including winds. Common experience tells us that for a tree to be broken during a storm or high wind is not such an unusual occurrence in itself as to raise an inference of lack of due care upon the part of the one having control thereof. It just does not speak for itself, at least to that extent.

Young v. Marlas, supra, is referred to at length by appellant. There, during a high wind, a glass transom fell and injured plaintiff. The claim of defendant was that an Act of God, the high wind, was the sole proximate cause. No claim is made that one factor of the res ipsa loquitur doctrine was not present. In the instant case while it is claimed there was an unusual wind, no claim that it was an Act of God is advanced. It is claimed, however, that the second factor, above-stated, does not exist and we agree. The cases are clearly distinguishable.

Finding no error the judgment of the trial court is affirmed.—Affirmed.

All JUSTICES concur.