Ronald Eugene JAHNKE, a Minor Child, by his Father and Next Friend, Frank Jahnke, and Frank Jahnke, Appellants,

v.

The INCORPORATED CITY OF DES MOINES, Iowa, Appellee.

No. 54586.

Supreme Court of Iowa.

Nov. 11, 1971.

Virgil Moore, Des Moines, for appellants.

Jack L. Briggs, Des Moines, for appellee.

LeGRAND, Justice.

This action seeks recovery for personal injuries sustained by Ronald Eugene Jahnke, a minor child, and for medical expense incurred on his behalf by his father, Frank Jahnke, allegedly caused by the negligence of defendant city in failing to properly protect said minor from the riotous conduct of a large and unlawful assemblage of citizens in the city of Des Moines on or about June 26, 1970. We refer to the minor as the sole plaintiff.

■ This appeal reaches us on a challenge to the trial court's order dismissing plaintiff's petition for failure to state a cause of action upon which any relief could be granted. In testing the sufficiency of the petition, we accept the allegations thereof as true. Hagenson v. United Telephone Company (Iowa 1969), 164 N.W.2d 853, 855; State Farm Mutual Automobile Insurance Co. v. Nelson (Iowa 1969), 166 N.W.2d 803.

On June 26, 1970, plaintiff was a passenger in a car driven by his father on University Avenue in the city of Des Moines. He was struck and injured by "concrete blocks and other large hard objects thrown by a large group of individuals" as the vehicle passed along this heavily traveled thoroughfare. Plaintiff alleges the City of Des Moines was negligent in failing to warn plaintiff of the danger to passing motorists from the people congregated near the street, although they were aware of such danger; in failing to close the street and divert the vehicle in which plaintiff was traveling away from a course of known danger; in failing to supervise and control a public street and to keep the same open and free from nuisance; and in failing to exercise due care to notify plain-

tiff of a danger known to defendant and unknown to plaintiff.

The City filed a motion asking dismissal of plaintiff's petition on these grounds:

(1) Municipal liability for personal injury inflicted by mobs or riots is based solely on mob violence statutes imposing such liability and not on common law;

(2) Municipalities are immune from liability for tort claims based upon the act or omission of officers or employees of the municipality, exercising due care, in the execution of statutes or ordinances, and

(3) Municipalities are not the insurers of the safety of travelers upon their streets.

Although plaintiff alleges a nuisance, he does not seriously urge that basis of liability and we find no facts set out upon which a finding of nuisance could be bottomed. We therefore limit our discussion to the issue upon which the petition must stand or fall—liability of the city for negligent failure to protect plaintiff from personal injuries by reason of mob violence or riotous conduct.

Similarly, to bring the controversy into sharp focus, we consider only the first ground of the motion to dismiss—that the city is not liable for damage inflicted by a riotous mob in the absence of a statute specifically imposing such liability.

We hold the trial court properly dismissed plaintiff's petition and we affirm.

The question to be answered is whether chapter 613A, enacted by the Sixty-second General Assembly in 1967, making governmental subdivisions, including municipalities, liable in tort to the extent therein set out makes the city responsible for damages inflicted by riots or mobs upon a showing its police force was negligent in carrying out statutory police duties.

Plaintiff insists chapter 613A, The Code, abrogated governmental immunity for all municipal torts; that the circumstances pled do not fall within any of the exceptions contained in section 613A.4; and that he may recover upon proof of negligence by the police in their handling of the disturbance.

The City, on the other hand, maintains that damage resulting from the illegal conduct of mobs or riotous assemblages is not compensable under a statute which discards the defense of governmental immunity, but no more. The City argues such liability arises only if a specific riot or mob violence statute so provides.

Although the City does not delineate its position in these terms, we take it that in order to prevail the City must show the facts alleged by plaintiff—assuming, as we must, their truth—do not fall within the definition of tort in section 613A.2. We say this because liability is prescribed by that statute for *all* municipal torts except those excluded by section 613A.4. We have already indicated these exceptions have no application here. See Boyle v. Burt, 179 N.W.2d 513, 517 (Iowa 1970), which, although affirmed by operation of law on a four-to-four split, was not challenged on the statement that chapter 613A eliminated "any common law immunity in tort previously accorded designated various governmental subdivisions" including cities and towns.

The petition and motion to dismiss squarely present for the first time the question of liability for damages inflicted by a mob or resulting from a riot, assuming the municipality or its police department to have been negligent in failing to prevent or control the outbreak. The parties so presented and argued the case, both in the trial court and here. We so consider and decide it now.

If the petition alleges matter constituting a tort under section 613A.2, The Code, the motion to dismiss was improperly sustained since that section imposes liability for *all* torts except these contained in the four exceptions of section 613A.4, none of which

is applicable here. We should mention that the motion to dismiss includes as one of its grounds reliance on the "due care" exception of the statute. However, we have not considered it in reaching our conclusion.

We hold the petition does not allege the commission of a tort upon which any relief could be granted, and for reasons hereinafter set out, we hold further that a municipality is not liable for mob-inflicted damage, either to personal property or to the person, in the absence of a statute specifically imposing such liability on the city.

Section 613A.2 establishes municipal tort liability as follows:

"Except as otherwise provided in this Chapter, every municipality is subject to liability for its torts or those of its officers, employees, and agents acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function."

We held in Strong v. Town of Lansing, 179 N.W.2d 365 (Iowa 1970), the effect of this language was to remove the defense of governmental immunity from the commission of all torts except as limited by section 613A.4, under which four classes of claims are exempted from the operation of the statute.

Under section 613A.1, a tort is defined as "every civil wrong which results in wrongful death or injury to person or injury to property and includes but is not restricted to actions based upon negligence, breach of duty, and nuisance."

All definitions of tort include as the starting point the violation of a duty running from the alleged wrongdoer to his victim. Black's Law Dictionary, Revised Fourth Ed., page 1660, 52 Am.Jur., Torts, section 2, page 362, and section 10, page 367; 86 C.J.S. Torts § 6, page 926; Gendler v. Sibley State Bank, 62 F.Supp. 805, 813 (District Court, Southern District of Iowa 1945).

It is here that plaintiff fails, for under the facts alleged in his petition, *all* authority holds there is no duty running from the municipality, or its officers, to the plaintiff *individually* which would entitle him to recover from the city for its failure to protect him from the ravages of a mob or riot. There is no authority to the contrary.

Although plaintiff does not cite us to these statutes, apparently he relies upon section 368.7, sections 368A.17 and 368A.-18, and section 743.7 of The Code, all of which deal with the duties and powers of police officers and with the control of riots and mobs. Section 368.7 provides in part that cities shall have the power to restrain and prohibit "riots, noise, disturbance, and disorderly assemblies, and to punish any person engaged in riotous, noisy, or disorderly conduct." Sections 368A.17 and 368A.18 direct marshals and police officers to "suppress all riots, disturbances and breaches of the peace." Section 743.7 makes it a misdemeanor for an officer to neglect his duty in the suppression of a riotous assembly.

■ The decided cases universally hold such statutes may not be a springboard from which an individual plaintiff can recover damages for injuries inflicted upon his person or property as a result of mob action. Recovery for such damage must be based upon a statute which specifically authorizes it; a general tort statute does not permit recovery therefor.

The subject of recovery for damages inflicted upon citizens by mobs is not a new one, although it has attained increased importance in recent years because of the frequency of riots and violent demonstrations. Statutes permitting recovery for damages resulting from mob violence date back to the 13th Century in England. A number of our states have had such laws since before 1900. There are now more than twenty which have such statutory remedies. Note; 81 Harvard Law Review

(1967), 653; Comment: "The Aftermath of the Riot: Balancing the Budget," (1968) 649, 684; 50 Cornell Law Quarterly (1965), 699, 704.

Some of these allow recovery only for property damage, a few for both property damage and personal injury. Most are strict liability statutes which compensate one who is damaged by a riot without proof of fault on the part of the municipality, although several require proof of negligence. Important to our discussion is the fact there is not a single reported case of recovery for such damage without a *specific* mob violence statute. Westminster Investing Corporation v. G. C. Murphy Company (1970) 140 U.S.App.D.C. 247, 434 F.2d 521, 523.

This is conceded, though criticized, in numerous law review articles on the subject. Note; "Municipal Tort Liability: Statutory Liability of Municipalities for Damage Caused by Mobs and Riots, 50 Cornell Law Quarterly (1965), 699, 707; "Riots and Municipal Liability," 14 N.Y. Law Forum (1968), 858–862; Note; "Compensation for Victims of Urban Riots," 68 Columbia Law Review (1968), 57, 65, 67; "Mob Action: Who Shall Pay the Price?", 44 Journal of Urban Law (1967), 407, 417–420.

Nor is this, as some have suggested, because the general rule of governmental immunity prevailing until recent years made it unnecessary to ascribe any other reason to a denial of liability. Some decisions, it is true, made this the test, but in others the rule was placed squarely on an absence of substantive right.

An early statement of the rule appears to Turner v. United States (1919), 248 U.S. 354, 358, 39 S.Ct. 109, 110, 63 L.Ed. 291, 294, where Justice Brandeis said in a case involving a claim against an Indian tribe for damage incurred as a result of mob violence, "Like other governments, municipal as well as state, the Creek Nation [Indian tribe] was free from liability for injuries to persons or property due to mob violence or failure to keep the peace. * * * Such liability is frequently imposed by statutes upon cities and counties. * * * But neither Congress nor the Creek Nation had dealt with the subject by any legislation prior to 1908. *The fundamental obstacle to recovery is not the immunity of a sovereign to suit, but the lack of a substantive right to recover the damages resulting from failure of a government or its officers to keep the peace. * * * The claimant's contention that the defendant owed to the claimant, as its own grantee, a greater duty than it owed to other persons in the territory to protect him against mob violence, finds no support in reason or authority.*" (Emphasis added.)

In an early Kentucky case, Prather v. City of Lexington, 52 Kentucky (13 B. Monroe) 559, 561 (1852), the court said, "We know of no principle of law that subjects a municipal corporation to a responsibility for the safety of the property within its territorial limits; nor has any case been cited in which such a principle has been recognized or established."

This same principle was announced in Ward v. Louisville, 55 Kentucky (16 B. Monroe) 184, 193 (1856). In more recent times, the result has been invariably the same. In Steitz v. City of Beacon (1945), 295 N.Y. 51, 64 N.E.2d 704, the issue was a failure of the fire department to afford adequate fire protection. The case arose after sovereign immunity had been removed in New York, and still the court ruled there was no right upon which an individual could recover. The court said, page 706, "Quite obviously these provisions [for fire protection] were not in terms designed to protect the personal interest of any individual and were clearly designed to secure the benefits of a well ordered municipal government enjoyed by all as members of the community." The court significantly went on to say the legislature should not be deemed to have imposed such an obligation upon the city in the absence of a clear indication that this was the intent of the statutory enactment.

We discuss the question of legislative intent later.

This case, too, relies upon the rule announced in Restatement 2d, Torts, section 288, page 29, particularly comment (b) on section 288(a).

In the 1969 case of Huey v. Cicero, 41 Ill.2d 361, 243 N.E.2d 214, 216, the supreme court of Illinois said, "*Independent of statutory or common-law concepts of sovereign immunity*, the general rule is that a municipality or its employees is not liable for failure to supply general police or fire protection. * * * Exceptions to the rule have been found only in instances where the municipality was under a special duty to a particular individual, such as protecting a material witness from threatened injury of third parties. * * *" (Emphasis added.)

In Henderson v. City of St. Petersburg (Florida App.1971), 247 So.2d 23, a citizen had requested police protection while delivering packages in a particularly dangerous neighborhood. It was not afforded and he was shot and killed while there. At page 25, the Florida Appellate Court said, "The general rule is that neither a municipality or its employees is liable for failure to supply general police protection, even though our courts have held municipal corporations liable for affirmative negligence or intentional torts committed by their police officers or employees. * * * Exceptions to this general rule have been made, however, where the municipalities were under a special duty to a particular individual. * * *"

In Westminster Investing Corp. v. G. C. Murphy Company, supra, (434 F.2d at 523), the court made this statement, "Up to now, the unvarying response which the courts have given to this query is that, in the absence of legislation, municipalities and other governmental bodies are not pecuniarily responsible for destruction and injury wreaked by rioting mobs. * * * No reported case holds a governmental body liable in these circumstances, or indicates that there could be liability without a statute or ordinance. All the statements by courts are the other way." And, at page 525, the court said, "There has been, it is true, some erosion of the immunity of states and municipalities from suit, but this has mainly come about in those fields in which established patterns of responsibility have already been set through decades of litigation—the areas of contracts and of ordinary torts. In those segments the courts, to the extent they do away with immunity, are simply removing barriers to suit, not erecting new causes of action unknown to the developing common law. In contrast, by imposing municipal liability for riot-caused damage we would be marching straight into a difficult region, never before plotted by courts acting alone." And, at page 526, this, "We hold, therefore, that the Murphy Company has, at present, 'no substantive right to recover the damages resulting from failure of a government or its officers to keep the peace.' [Turner v. United States, supra, 248 U.S. at 358, 39 S.Ct. at 110, 63 L.Ed. 291]."

Other case authority to the same effect may be found in Wong v. City of Miami, 237 So.2d 132, 134 (Florida 1970), where the court said liability for riot damage was not being denied "merely because sovereign immunity had not been relaxed sufficiently by prior decisions."

Silver v. City of Minneapolis, 284 Minn. 266, 170 N.W.2d 206 (1969), was decided on the issue of discretionary exercise of police power under the Minnesota statute, a provision which does not appear in chapter 613A. Nevertheless this language at page 210 is of interest: "We do not believe that the legislature in lifting the bar of sovereign immunity intended to permit recovery in a case such as this [damage resulting from mob violence]. Had it intended to do so it could easily have said so, as it has, for example, in the case of lynching * * *.

"The case of National Board of Young Men's Christian Association v. United

States, 395 U.S. 85, 89 S.Ct. 1511, 23 L. Ed.2d 117, did not involve an action brought under the Federal Tort Claims Act, but it did involve the right of plaintiffs to recover in the Court of Claims for damages sustained when the United States troops, during riots in Panama, entered plaintiffs' building. The rationale involved in the plaintiffs' claim is analogous to that involved here. Mr. Justice Harlan, in a concurring opinion, said, * * * 'Petitioners claim that they may recover on a bare showing that they were afforded "inadequate protection" has an additional defect which should be noted. If courts were required to consider whether the military or police protection afforded a particular property owner was "adequate", they would be required to make judgments which are best left to officials directly responsible to the electorate. * * *

> * * * * * *
>
> ' * * * While the rioters are surging through the streets out of control, everyone must recognize that the Government cannot protect all property all of the time. I think it appropriate to say, however, that our decision today does not in any way suggest that the victims of civil disturbances are undeserving of relief. But it is for the Congress, not this Court, to decide the extent to which those injured in the riot should be compensated, regardless of the extent to which the police or military attempted to protect the particular property which each individual owns.' "

Another case of interest in this area is Hart's Food Stores, Inc. v. City of Rochester, 44 Misc.2d 938, 255 N.Y.S.2d 390, 391 (1965), where the court said, "At this point, let us dispose of any claim that the city-defendant is liable at common law for damages caused by mobs or riots. The Supreme Court of the United States has steadfastly held that a municipality incurs no liability at common law for damages sustained as a result of mobs or riots. That court held * * * that the right of recovery was not founded in common law

but would have to be created by an act of the legislature."

Again in Amato v. City of New York (U.S.D.C., Southern District of New York 1967), 268 F.Supp. 705, 710, this principle was stated when the court sustained a motion to dismiss in this language:

> "The reason the City is not liable for failing to act is not because it is immune as sovereign but because there is no duty owed any individual plaintiff."

A similar decision is found in Motyka v. City of Amsterdam (1965), 15 N.Y.2d 134, 138, 256 N.Y.S.2d 595, 597, 204 N.E.2d 635, 636, involving negligence of the fire department after the defense of governmental immunity was no longer available and cities had been made answerable equally with individuals and private corporations for their wrongs. The Court of Appeals of New York said:

> "But just as it is necessary to sustain an action against an individual or private corporation to ascertain whether it is under a duty to a plaintiff, so, also, it is necessary to decide whether a city * * * is under a duty to a plaintiff irrespective of sovereign immunity. * * * The rule is that, independent of sovereign immunity, a municipality is not liable for failure to supply general police and fire protection. * * *."

Running through the case law and literature on this question is the rationale which denies recovery because there is no duty owing by the municipality or its police force to the individual citizen. Without such duty, there cannot be a cause of action.

> "The heart of the problem centers upon the inquiry of whether or not there is a duty on the part of the municipal corporation to an individual member of the public —not the public at large—to exercise due diligence in protecting and guarding him against the damages that could be inflicted by a mob. Any study of liability must pri-

marily focus on this point." Sengstock, "Mob Action: Who Shall Pay the Price?", supra, 44 Journal of Urban Law at page 412.

This same statement is made by the author in "Riots and Municipal Liability," 14 N.Y.Law Forum (1968), page 860.

See also McQuillin, Municipal Corporations, Third Ed., section 53.145 and Restatement of Torts 2d, section 288, page 29.

■ Plaintiff's petition failed to allege facts upon which it could be found the city owed him a duty separate or superior to that which it owed the public generally. In the absence of such an obligation he cannot recover.

■ So far we have talked only of defendant's duty to protect plaintiff from the violence of the unruly crowd, but what we have said disposes, too, of plaintiff's argument that defendant must warn him of impending danger. If, as we hold, there is no duty sufficient to support this action on the question of defendant's obligation to protect plaintiff individually, then there is no duty either to warn him of possible danger from the unlawful assemblage.

Plaintiff's main premise, of course, is that the now discarded principle of governmental immunity was the only obstacle barring recovery for damages such as he claims here and that its demise authorizes suit against a municipality for personal injuries inflicted by mob violence. Implicit in this argument is the contention that chapter 613A must be interpreted to include the negligence of the police department in either preventing or controlling a riot or civil disturbance as actionable under the definition of tort contained in the chapter.

■ We are convinced the accepted rules of statutory interpretation do not permit this. The ultimate goal of all in construing statutes, of course, is to determine and give effect to the legislative intent in enacting the law. In discovering such intent we consider the language used, the purposes to be served and the evil sought to be remedied. We assume the legislature knew the existing state of the law and prior judicial interpretations of similar statutory provisions. We assume, too, its use of terms was in the accepted judicially established context unless there is clear evidence to the contrary.

In this case we assume, therefore, the legislature was familiar with the fact no court had ever construed a tort to include damage done by riotous mobs, no court had ever held the city owed a separate independent duty to furnish police protection to an individual citizen as against the public as a whole, and no court had allowed recovery for damages such as plaintiff sustained here in the absence of a specific riot damage statute authorizing it.

■ To hold under these circumstances that the provisions of chapter 613A include within the definition of tort or civil wrong the type of claim for which plaintiff seeks recovery would run contrary to the accepted canons of statutory interpretation. 82 C.J.S. Statutes § 321, page 560; 50 Am. Jur., Statutes, section 223, page 200, and section 294, page 274; 2 Sutherland, Statutory Construction (Third Ed., Horack), section 4501, page 314, 315, and section 4510, page 327, 328; Buchmeier v. Pickett, 258 Iowa 1224, 1228, 1229, 142 N.W.2d 426 429 (1966); Hubbard v. State, 163 N.W.2d 904, 909 (Iowa 1969); Overbeck v. Dillaber, 165 N.W.2d 795, 797 (Iowa 1969); Wilson v. Iowa City, 165 N.W.2d 813, 822 (Iowa 1969); Dobrovolny v. Reinhardt, 173 N.W.2d 837, 840 (Iowa 1970); Cedar Memorial Park Cemetery Association v. Personnel Associates, Inc., 178 N.W.2d 343, 350 (Iowa 1970).

In summary, we repeat our previous holdings that chapter 613A, The Code, abrogated governmental immunity as a defense to all torts committed by a municipality except those exempted under the provisions of 613A.4. For the reasons heretofore set out we further hold that

property damage or personal injuries resulting from the negligent failure of the municipality, or its police department, to prohibit, prevent, or control a riot cannot be a tort as defined in 613A.1(3) under the facts pled by plaintiff; and we therefore hold plaintiff's petition fails to state a cause of action upon which any relief could be granted.

The order of the trial court dismissing the petition is affirmed.

Affirmed.

MOORE, C. J., and MASON, RAWLINGS and REES, JJ., concur.

REYNOLDSON and BECKER, JJ., dissent.

UHLENHOPP, J., joins in Division II of the dissent.

REYNOLDSON, Justice (dissenting).

As indicated in the majority opinion, Ronald Eugene Jahnke at time of injury was a passenger in his father's car on University Avenue in Des Moines. The petition was in two divisions, the first for the minor plaintiff's damages for personal injuries alleged to be lacerations requiring 35 stitches, a skull fracture, broken fingers, scars and other trauma. The second division was for the father's past and future medical expense for his son. In this dissent we refer to the son as "plaintiff".

As the auto was being driven in the 1000 block of University Avenue it was "struck by concrete blocks and other large, hard objects thrown by a large group of individuals who ran to the edge of the street as the vehicle approached * * *."

Allegations of defendant's negligence were:

"a. In that the Police Department and other employees of the City of Des Moines who were aware of the danger to passing motorists on University Avenue from the people congregated near said street, carelessly and negligently failed to warn the Plaintiff Ronald Eugene Jahnke of said danger, or to close said street and to attempt to divert the vehicle in which he was riding from a course of traffic which would take it into an area of danger known to Defendant's said employees. (613A.-2)

b. In failing to supervise and control a public street and commons within the city and to keep the same open and free from nuisance. (389.12)

c. In failing to exercise due care to notify Plaintiff of a danger known to the Defendant and unknown to the Plaintiff."

Under our law, defendant's motion to dismiss admits the truth of the above allegations. State Farm Mutual Automobile Ins. Co. v. Nelson, 166 N.W.2d 803 (Iowa 1969). A motion to dismiss is sustainable only where it appears to a certainty a plaintiff would not be entitled to any relief under any set of facts which could be proved in support of the claims asserted by him. Pride v. Peterson, 173 N.W.2d 549, 554 (Iowa 1970); Allied Concord Financial Corp. v. Hawkeye Lbr. Co., 172 N.W. 2d 264, 266 (Iowa 1969); Newton v. City of Grundy Center, 246 Iowa 916, 920, 70 N.W.2d 162, 164 (1955).

For the purposes of this appeal defendant thus admits not only plaintiff's injuries, but that defendant's police and municipal employees were negligent in 1) failing to warn plaintiff of the danger existing near University Avenue by the missille-throwing individuals and failing to divert traffic or close the street, although the danger to passing motorists was known to such employees, and 2) failing to carry out the statutory duty to control a public street within the city, or concomitantly, to warn of dangers known to defendant's employees and unknown to plaintiff. The above is

the gist of plaintiff's petition, reasonably construed.

Majority opinion does not squarely treat these issues, but sustains the motion to dismiss on a different ground, the claimed nonliability of the city in failing to "prohibit, prevent, or control a riot * * *." The quoted language is taken from the holding in the last paragraph of majority opinion, and is found variously stated throughout the decision. Plaintiff never alleged such specification, nor is he necessarily obligated to carry that burden in order to recover.

Briefly stated, majority's rationale is the city and its employees owed a duty of protection from mob violence to everyone, but not to the plaintiff as an individual. In the absence of duty, there can be no "civil wrong" upon which to base the tort liability imposed on municipalities by chapter 613A, Code, 1971. Implicit but unspoken in this rationale is the concept that a mob is in the nature of a holocaust or act of God, supplanting all considerations of negligence. Here, however, the negligence is pleaded and by motion, admitted. Majority opinion, in emphasizing the instrumentality (mob) which it alleged caused plaintiff's injuries, disregards the municipal employees' admitted negligence which constituted the proximate cause.

Finally, majority takes the position because no other jurisdiction has grounded municipal liability on failure to prevent or control riots in absence of statute, Iowa should not be the first. In spite of chapter 613A *imposing* liability on cities, it is claimed the legislature intended to create an exception it did not express in that chapter, to exempt claims for injuries caused by mob violence.

We treat the issues raised by majority's reasoning in four divisons.

I. *Did defendant owe a duty to plaintiff?*

The concept of "duty", heavily relied on by majority, is of little analytical aid. In the absence of a statutory obligation, to state there is or is not a duty is merely to state a result, a conclusion that plaintiff's interests are or are not entitled to legal protection against defendant's action or lack thereof. MacLean v. Parkwood, Inc., 247 F.Supp. 188, 191 (D.N.H.1965).

Prosser, at pages 324–326 of his text "The Law of Torts" § 53 (4th ed. 1971) makes the following points:

"In other words, 'duty' is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in the light of the apparent risk. * * * *It is a shorthand statement of a conclusion, rather than an aid to analysis in itself.* * * * [I]t should be recognized that 'duty' is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." (emphasis supplied)

Thus in the case at bar when it is held defendant had no "duty", this is merely the conclusion that recovery will not be allowed.

No "duty", it is said, existed at common law in this area. This of course begs the question, as common law no longer governs municipal tort liability in Iowa. Beyond that, our research reaches a contrary result. Early in the history of English common law, dating back to the rule of Canute the Dane (1016–1035), the concept of duty to provide police protection became imposed on the governing unit to the extent of imposing strict liability to compensate the *individual* damaged by the breach. Parliament confirmed this duty in Statute of Winchester, 13 Edw. I, Stat. 2, c. 2–3 (1285) and the English Riot Act of 1714, 1 Geo. I, Stat. 2, c. 5, and amendments. Some historical background is found in a 1911 opinion of the United States Supreme

Court, Chicago v. Sturges, 222 U.S. 313, 323, 32 S.Ct. 92, 93, 56 L.Ed. 215, 220–221:

"The policy of imposing liability upon a civil subdivision of government exercising delegated police power is familiar to every student of the common law. We find it recognized in the beginning of the police system of Anglo-Saxon people. Thus 'The Hundred,' a very early form of civil subdivision, was held answerable for robberies committed within the division. By a series of statutes, beginning possibly in 1285, in the statutes of Westminster, coming on down to the 27th Elizabeth, the riot act of George I. and act of George II., chap. 10, we may find a continuous recognition of the principle that a *civil subdivision* intrusted with the *duty* of protecting property in its midst, and with police power to discharge the function, *may be answerable not only for negligence affirmatively shown, but absolutely as not having afforded a protection adequate to the obligation."* (emphasis supplied)

It is true, as majority indicates, these English statutes were adopted by a number of our states with various modifications and for the most part imposed strict liability. Thus it came to be loosely said, by ignoring historical common law precedent, there was no liability for damages resulting from mob violence in the absence of statute. Most decisions denying liability, however, did so on the basis of governmental immunity grounded on the "governmental function" vis-a-vis "proprietary function" dichotomy. While the majority denies governmental function immunity was basis for the general rule, the opposite view is expressed in 38 Am.Jur., Municipal Corporations § 652, p. 361; 63 C.J.S. Municipal Corporations § 773a, p. 73; 3 E.C. Yokley, Municipal Corporations § 464, p. 103 (1958); 18 E. McQuillin, Municipal Corporations § 53.145, p. 542–43 (3d rev. ed. 1963); Borchard, Government Liability in Tort, 34 Yale L.J. 229, 257 (1925); Note, Municipal Liability for Riot Damage, 16 Hastings L.J. 459, 460 (1965); Comment, Municipal Corporations, 37 Brooklyn L. Rev. 434, 436 (1971). The point is important to majority's rationale, for if the true basis of most case law was governmental immunity the repeated statement that no decisional authority exists to impose liability for mob-inflicted injuries loses all its impact in light of our new legislation. The new statute not only imposes municipal liability (except in certain situations immaterial here) but specifically nullifies the discredited governmental function-proprietary function distinction. Section 613A.2, Code, 1971.

The few minority rule cases relied on by majority, which do not overtly deny liability on the ground of governmental immunity, are distinguishable on their facts or statutory basis.

Henderson v. City of St. Petersburg, 247 So.2d 23 (Fla.App.1971) must be viewed in the light of the absence of a municipal tort liability statute in Florida. The Minnesota Supreme Court in Silver v. City of Minneapolis, 284 Minn. 266, 170 N.W.2d 206 (1969) denied recovery on an exception (discretionary function) in that state's municipal liability statute not found in Iowa Code Section 613A.4. Plaintiff's petition in Huey v. Town of Cicero, 41 Ill.2d 361, 243 N.E.2d 214 (1968) did not allege any specific omissions of defendants, any causal connection between lack of conduct and injury, or any knowledge by defendants plaintiff may have been in danger. With reference to the most recent New York case cited, an important statutory distinction exists in our law. In N.Y. Court of Claims Act § 8 (McKinney 1963) liability is imposed "in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations." This limitation, which does not appear in chapter 613A, Code, 1971, has been strictly applied in New York to deny liability where the act or omission is peculiar to a government entity as opposed to an individual or corporation. This distinction is in substance the ancient governmental-proprietary dichotomy rejected by the Iowa

legislature in § 613A.2. Prather v. City of Lexington, 52 Ky.Rep. 559 (1852) turned on the rule that police officers of the city were not municipal officers, a concept rejected by the Iowa court in Strong v. Town of Lansing, 179 N.W.2d 365 (Iowa 1970). Most logical criticism of the cited federal decision, Westminster Investing Corp. v. G. C. Murphy Co., 140 U.S.App. D.C. 247, 434 F.2d 521 (1970), is to be found in 37 Brooklyn L.Rev. 434 (1971).

Further, those cases cited by majority which do attempt to assign reasons for flat denial of liability assign the same time-worn theses so long employed to justify governmental immunity. The essence of the underlying thesis of these cases is, "because we owe a duty to everyone, we owe it to nobody." Such reasoning would be dismissed as preposterous if it were not for its unthinking and unfortunate enshrinement in our jurisprudence.

We do not ignore the policy considerations posed by decisions relied on by majority. Most of the spectres raised are fallacious, as is defendant's argument here, because it is assumed a strict liability standard is to be imposed rather than ordinary tort liability principles. Municipal employees should be required to exercise due care under the circumstances, applying the prudent man test. Fault, proximate cause and foreseeability are all involved and must be established. The question here is not strict municipal liability for mob violence. It is a question of admitted negligence of municipal police and employees in the manner alleged in plaintiff's petition.

In this jurisdiction concepts of "duty" are deeply rooted in our historic and unique case law creating obligations grounded on statutory powers delegated by the state to municipalities. In 1868 Judge Dillon, speaking for this court, said statutory delegation of a power to a municipality carried with it a concomitant duty with respect to the subject matter:

"Thus, incorporated cities and towns, wherever they are invested by their organic or constituent acts with general supervision and control over their streets * * * are held liable, without any statute expressly giving the action, for injuries caused by unsafe and defective streets."—Soper v. Henry County, 26 Iowa 264, 268.

Although this concept is not followed by all jurisdictions (57 Am.Jur.2d, Municipal, School, and State Tort Liability § 48, p. 58) it was consistently and logically extended in Iowa to strike the shackles of governmental immunity.

The statutory authority of the city to maintain parks, found in § 389.1, was the basis for municipal liability in Florey v. City of Burlington, 247 Iowa 316, 73 N. W.2d 770 (1955). Power granted the city to establish and maintain parks by § 368.30 as well as the power granted in § 389.12 foundationed liability in Fetters v. City of Des Moines, 260 Iowa 490, 149 N.W.2d 815 (1967) and in Lindstrom v. Mason City, 256 Iowa 83, 126 N.W.2d 292 (1964).

Where one using a public restroom was injured because of a defective door, we found municipal liability bottomed upon the permissive statutory authority granted cities to establish and maintain public restrooms. Bauman v. City of Waverly, 164 N.W.2d 840 (Iowa 1969). The opinion states at page 847:

"In Florey v. City of Burlington, 247 Iowa 316, 319, 73 N.W.2d 770, 772, we said, 'The municipal corporation is not liable for negligent acts of its employees engaged in performing governmental functions but it is liable, as is a private corporation, for their negligence in performing proprietary duties; and it is not immune from liability for damages due to dangerous conditions resulting from its own misfeasance or non-feasance in governmental matters.' * * * We also said at page 320, 'It [municipal immunity] is not complete immunity from

judicial accountability such as is accorded the state—*only freedom from the rule of respondeat superior where the servant is engaged in governmental activity.'* (Emphasis added.)

*"These opinions make it clear the city's duty arises because authority and control over a particular activity have been delegated to it."* (emphasis supplied)

Of particular importance here was the concept again enunciated in *Bauman* that the municipal immunity then recognized applied only to suspend the doctrine of respondeat superior, thus relieving the city from liability for torts of its servants engaged in governmental functions. This rule was applied in Mardis v. City of Des Moines, 240 Iowa 105, 34 N.W.2d 620 (1949) where the municipality was held not liable for the tort of city employees negligently performing their governmental street cleaning function. See also McGrath Building Company v. City of Bettendorf, 248 Iowa 1386, 85 N.W.2d 616 (1957).

The operative facts in these cases antedated chapter 613A. The thread interwoven through the decisions was this: where city's misfeasance or nonfeasance in the exercise of a statutory power or authority resulted in a defective condition or dangerous situation causing injury, it was held to be the municipality's negligence in exercise of a governmental function and liability ensued. Where specific acts of municipal employees directed to the same function were involved, it was held they were engaged in a governmental activity. From that premise it followed municipal immunity cut the cord of respondeat superior. *We recognized the tort*; but we suspended imposition of vicarious liability. Even then, defendant municipality was required to affirmatively raise the immunity defense or incur liability. Groves v. Webster City, 222 Iowa 849, 860–861, 270 N.W. 329, 335 (1937); cf. McKeown v. Brown, 167 Iowa 489, 149 N.W. 593 (1914).

Here plaintiff's injuries occurred after chapter 613A became law. Not only is municipal governmental immunity abrogated; the municipality is declared to be responsible for the torts of its officers and employees:

"Section 2 of the Act (613A.2 I.C.A.) clearly provides liability of every municipality for its torts and those of its officers, employees, and agents acting within the scope of their employment or duties which arise out of a governmental or proprietary function. Iseminger v. Black Hawk County, Iowa, 175 N.W.2d 374, 378; Larsen v. Pottawattamie County, Iowa, 173 N.W.2d 579, 581."—Strong v. Town of Lansing, 179 N.W.2d 365, 367 (Iowa 1970).

Majority rightly concedes the unchallenged statement from Boyle v. Burt, 179 N.W.2d 513, 517 (Iowa 1970) that chapter 613A eliminated "any common law immunity in tort previously accorded various designated governmental subdivisions" including cities and towns. Liability is imposed for all torts, not just for "common law torts" or "old torts" or "classical torts", but just "torts."

With these principles in mind, we turn to a consideration of the specific statutory powers creating "duty" owed plaintiff in the case before us.

II. *Statutory duty of defendant city with respect to streets.*

Section 389.12, Code, 1971 relevantly provides,

*"389.12 Duty to supervise.* They shall have the care, supervision, and control of all public * * * streets, avenues * * * within the city, and shall cause the same to be kept open and in repair and free from nuisances."

The cities' authorities have the power to regulate traffic on the street and to prohibit assemblages thereon, § 321.236(2) (3), Code, 1971.

The power granted the municipality by the language of § 389.12 created the basis for liability in our decisions involving a billboard falling from beyond the street area [Blivens v. City of Sioux City, 85 Iowa 346, 52 N.W. 246 (1892)]; a defectively supported metal sign post [Hall v. Town of Keota, 248 Iowa 131, 79 N.W.2d 784 (1956)]; and an allegedly dangerous stop and go sign [Gorman v. Adams, 259 Iowa 75, 143 N.W.2d 648 (1966)].

Plaintiff's petition clearly alleges defendant city's police department and other employees were aware of the danger to passing motorists from the people congregated in the area of University Avenue. Defendant, with its admitted knowledge of the danger, had the power and corresponding obligation to use due care to control the street and keep it open. Sections 389.-12, 321.236(2) (3), Code, 1971. It also had the additional minimum duty to warn those persons who were in lawful use of the street of the danger there prevailing. 40 C.J.S. Highways § 262, p. 306.

In Parmenter v. City of Marion, 113 Iowa 297, 85 N.W. 90 (1901) plaintiff was injured by a bale of hay thrown from a loft above the street. Liability was denied because it was not shown city had knowledge of this practice. The decision, however, reaffirmed the duty of the city under the power delegated by the statute and the court said,

> "It may be * * * that if he * * * persistently or continuously threw bales of hay from the second story of his building to the sidewalk below, with the knowledge, express or implied, of the city, and thereby endangered the safety of persons using the streets, and the city failed to use reasonable care to stop this dangerous use, it would be liable." (113 Iowa at 306, 85 N.W. at 93)

This reasoning is directly applicable in the case at bar, where defendant city admits the knowledge absent in *Parmenter*. We fail to find any distinction between hay bales and cement blocks, other than the potential greater injury by the latter. Analogous reasoning is found in Pietz v. City of Oskaloosa, 250 Iowa 374, 92 N.W.2d 577 (1958).

The presence in the street of an assemblage of persons engaged in unlawful activities constituting a menace to the safety of users of the way might well be a nuisance creating a duty under § 389.12. We have never limited "nuisance" to the condition of the surface of the street or to presence of semi-permanent structures or obstructions. Wheeler v. City of Ft. Dodge, 131 Iowa 566, 108 N.W. 1057 (1906); Parmenter v. City of Marion, 113 Iowa 297, 85 N.W. 90 (1901).

The municipality is not relieved from liability because the dangerous situation with respect to a street is created by third persons. Holmquist v. C. L. Gray Const. Co., 169 Iowa 502, 151 N.W. 828 (1915); Pace v. City of Webster City, 138 Iowa 107, 115 N.W. 888 (1908); 19 E. McQuillin Municipal Corporations § 54.43, p. 115, § 54.91, p. 257 (3d ed. rev. 1967). Even absent the critical circumstances prevailing here of which defendant had alleged knowledge, the rule has always been the municipality is required to exercise due care to guard or warn travelers against such injuries as might be reasonably anticipated from dangers in its streets. Spurling v. Incorporated Town of Stratford, 195 Iowa 1002, 191 N.W. 724 (1923); 19 E. McQuillin, Municipal Corporations § 54.91, p. 257 (3d ed. rev. 1967). In Gorman v. Adams, 259 Iowa 75, 143 N.W.2d 648 (1966), we adopted a rule from two prior Iowa decisions with respect to the city's duties in relation to streets and sidewalks:

> "This duty extends, not merely to the surface of the street or walk, but to those things within its control which endanger the safety of those using the street or walk properly." (259 Iowa at 81, 143 N.W.2d at 651)

This concept has been expanded to include areas not in the street but adjacent thereto and comprising a danger to those lawfully

using the street area. Murphy v. City of Waterloo, 255 Iowa 557, 123 N.W.2d 49 (1963); Nicholson v. City of Des Moines, 245 Iowa 270, 60 N.W.2d 240 (1953); Bixby v. Sioux City, 184 Iowa 89, 164 N.W. 641 (1917). The obligation to guard may require the city to barricade or to close a street or forbid public travel at the point of obstruction or danger. Nicholson v. City of Des Moines, 245 Iowa 270, 281, 60 N.W.2d 240, 246 (1953); Leonard v. Mel Foster Co., 244 Iowa 1319, 60 N.W.2d 532; Whitlatch v. City of Iowa Falls, 199 Iowa 73, 75, 201 N.W. 83, 85 (1924); 19 E. McQuillin, Municipal Corporations § 54.98, p. 237 (3d ed. rev. 1967).

Plaintiff's specifications of negligence properly raise a violation of the above duties long recognized in this jurisdiction. His petition under our established case law as modified by chapter 613A, Code, 1971, is invulnerable to a motion to dismiss.

III. *Statutory duty of defendant city with respect to disturbances.*

While we do not believe this case should turn on the narrow and limited ground selected by our brothers, we do believe that if the negligence of the city in failing to prevent or control a riot can be read into plaintiff's specifications, there is ample authority to find such duty, or the concomitant duty to warn.

The statutory powers invoked by this court to support the municipal duty or obligation to the plaintiffs in the above cited Iowa cases are similar to or even less forceful than the powers granted cities by statute with respect to riots and disturbances.

Section 368.7(7) grants cities the power to restrain and prohibit " * * * riots, noise, disturbance, and disorderly assemblies * * *."

Chapter 368A, Code, 1971, entitled "General Powers and Duties of Municipal Officers" contains the following sections:

"§ *368A.17 The marshal.* The marshal shall be ex officio chief of police * * *. He shall suppress all riots, disturbances, and breaches of the peace * * *."

"§ *368A.18 Policemen.* The officers and members of the police force * * * shall have the same powers as marshals to make arrests and suppress riots, disturbances, and breaches of the peace."

By motion to dismiss defendant admitted plaintiff's allegation that police department knew of the danger to persons using University Avenue, caused by the missile-throwing individuals. If there was a riot or disturbance in progress, which defendant concedes and the lower court assumed, then defendant had a statutory power and duty to use due care to suppress or control it. Sections 368.7, 368A.17, 368A.18, Code, 1971. Defendant had the same minimum duty to warn persons who might unknowingly go into the zone of danger as it would have with respect to any other danger in the street. The numerous decisions cited in the previous division support, by analogy, this position. We can see no distinction between a dangerous condition caused by blocks piled in the street or blocks being thrown into the street, so long as defendant knew the risk occasioned to unsuspecting persons lawfully using the thoroughfare where the disturbance was progressing.

Liability of city employer for torts of police employees in the discharge of their official duties, prior to the enactment of chapter 613A, was largely denied on the ground of governmental (function) immunity. Leckliter v. City of Des Moines, 211 Iowa 251, 233 N.W. 58 (1930); Jones v. Sioux City, 185 Iowa 1178, 170 N.W. 445 (1919); Calwell v. City of Boone, 51 Iowa 687, 2 N.W. 614 (1879). It follows recovery in those cases, if tried today, would be allowed under § 613A.2, imposing municipal liability and abrogating the "governmental function" distinction. There is no reason to say negligence by police officers

in control of a disturbance, or failure to warn persons of the danger of a disturbance, should be any less actionable than negligence in any other police function.

We recently held a city or town's police officers are agents thereof, and the city or town would therefore be liable for wrongs committed by them in discharge of their governmental duties. Strong v. Town of Lansing, 179 N.W.2d 365 (Iowa 1970).

Clearly, if it is logical to contend plaintiff's allegations raised the issue of liability based on defendant's failure to exercise due care in prohibiting or controlling a riot or disturbance, there is ample authority in Iowa, after enactment of chapter 613A, to impose this duty.

IV. *Legislative intent and chapter 613A.*

A main thesis of the majority opinion is that the Iowa legislature, in enacting chapter 613A, never intended to impose municipal liability in cases such as the one before us.

Coke commented statutes are enacted with the purpose of righting some wrong. What was the historical backdrop against which this legislation must be interpreted?

Iowa, along with other states, adopted the concept of governmental tort immunity from English common law, by court decisions, and continued to invoke it long after its substantial demise in Britain. See British Crown Proceedings Act of 1947, 10 & 11 Geo. VI c. 44.

Our realization of the anachronistic nature of this feudal doctrine was first manifested by the devices employed to circumvent it: the governmental function—proprietary function dichotomy; the nuisance doctrine; the misfeasance-nonfeasance distinction—each necessarily constituting, in some measure, a play of words with a modicum of substantive logic and reason.

"There is little that can be said about such distinctions except that they exist, that they are highly artificial, and that they make no great amount of sense. Obviously this is an area in which the law has sought in vain for some reasonable and logical compromise, and has ended with a pile of jackstraws."—W. Prosser, The Law of Torts § 131, p. 982 (4th ed. 1971)

We next retreated from any defense of the concept, which had been almost universally condemned by legal scholars and many courts, but held although governmental immunity was judicially conceived, it must be legislatively buried. cf: Boyer v. Iowa High School Athletic Association, 256 Iowa 337, 127 N.W.2d 606 (1964); Moore v. Murphy, 254 Iowa 969, 119 N.W.2d 759 (1963).

The first meaningful Iowa legislative assault on the governmental immunity came in 1965 with enactment of the Iowa Tort Claims Act, 61 G.A. ch. 79, now chapter 25A, Code, 1971. It permitted, under restrictive procedures, litigation of claims for damages against the state " * * * caused by the negligent or wrongful act or omission of any employee of the state while acting within the scope of his office or employment, under circumstances where the state, if a private person, would be liable to the claimant for such damage, loss, injury, or death." [§ 25A.2(5)] There is a cautionary reservation found in § 25A.4: "The immunity of *the state* from suit and liability is waived to the extent provided in this chapter."

There followed in 1967 the sweeping abrogation of immunity as to governmental subdivisions, defined to include cities. 62 G.A. ch. 405, now chapter 613A, Code, 1971. The relevant section is 613A.2:

*"613A.2 Liability imposed. Except as otherwise provided in this Chapter,* every municipality is subject to liability for its torts and those of its officers, employees, and agents acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function." (emphasis supplied)

Tort is defined as "* * * every civil wrong which results in wrongful death or injury to person or injury to property and includes but is not restricted to actions based upon negligence, breach of duty, and nuisance." [§ 613A.1(3)]

No implied reservation of common-law municipal immunity is encountered in chapter 613A comparable to the reservation of state immunity in § 25A.4. By its express terms liability for tort is *imposed* "except as provided in this chapter." (613A.2) Only four enumerated exempt areas are to be found in the chapter. None of the exempted situations created by § 613A.4 are applicable here, as conceded by majority. By negative inference, however, § 613A.4 supports our position for it exempts an act *or omission* of an officer or employee *only where he is in the exercise of due care*. Affirmative words may, and often do, imply a negative of what is not affirmed, as strongly as if expressed. The District Township of City of Dubuque v. *City of Dubuque, 7 Iowa 262 (1858)*. The intent is clear there is no municipal immunity for acts and omissions of an officer or employee who is negligent in the execution of a statute.

As the provisions of chapter 613A must control the disposition of the municipal tort case here presented, reference must also be made to Iowa's law of statutory construction, § 4.2, Code, 1971:

"*4.2 Common-law rule of construction.* The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this Code. Its provisions and all proceedings under it shall be liberally construed with a view to promote its objects and assist the parties in obtaining justice."

In construing legislation we must look to the object to be accomplished, evil sought to be remedied, or purpose to be subserved, and place on it a reasonable or liberal construction which will best effect its purpose rather than one which will defeat the legis-lation. Chicago & North Western Ry. Co. v. City of Osage, 176 N.W.2d 788 (Iowa 1970); State v. Robinson, 165 N.W.2d 802 (Iowa 1969).

The inexorable and reasonable conclusion to be reached from chapter 613A would be that the legislature intended to sweep away all those judicial contrivances disallowing recovery for municipal negligence, save only the four excepted situations identified in § 613A.4. The majority, however, asserts the legislature must have been familiar with the fact recovery had been disallowed in other jurisdictions where damage was mob-inflicted and no recovery had been allowed in the absence of riot damage statutes. Therefore it follows, majority contends, the legislature did not intend to include such actions within the meaning of tort or civil wrong as those words are found in chapter 613A.

One would more reasonably assume the Iowa legislature knew in Iowa as in most *jurisdictions municipal immunity for police* negligence, before this legislation, was grounded on the discredited concept of "governmental function" and by abrogating such concept in § 613A.2, intended to restore the doctrine of respondeat superior and impose liability in all such cases.

Other more pertinent principles of statutory interpretation are ignored by majority. We have said repeatedly that legislative intent is to be gathered from the language of the statute itself. Maguire v. Fulton, 179 N.W.2d 508, 510 (Iowa 1970); Iowa Hardware Mutual Insurance Co. v. Hoepner, 252 Iowa 660, 663, 108 N.W.2d 55, 57 (1961); In re Klug's Estate, 251 Iowa 1128, 1132, 104 N.W.2d 600, 603 (1960). We have ruled we would not speculate as to probable legislative intent apart from the wording used; that we view the legislative intent from what is said in the statute rather than what might have been said. Hill v. Electronics Corporation of America, 253 Iowa 581, 587, 113 N.W.2d 313, 317 (1962); Kane v. City of Marion, 251 Iowa 1157, 1165, 104 N.W.2d 626, 631 (1960).

More important in considering interpretation of chapter 613A, it is apparent the legislature carefully defined those situations in which the municipal liability it imposed was not to operate. Had it intended to create nonliability where the damages were caused by mob violence, it could easily have added a fifth exempted area in § 613A.4. In 2 J. Sutherland, Statutory Construction § 4916 (3d ed. 1943, Supp. 1971) the precise rule here relevant is stated:

> "And the enumeration of exceptions from the operation of a statute indicates that it should apply to all cases not specifically excepted."

See also Bushnell v. Superior Court of Maricopa County, 102 Ariz. 309, 311, 428 P.2d 987, 989 (1967); Williams v. Los Angeles Metropolitan Transit Authority, 57 Cal.Rptr. 7, 10 (Cal.App.1967). This is nothing more than an application of the broader rule "expressio unius est exclusio alterius", long applied by this court. The language in North Iowa Steel Company v. Staley, 253 Iowa 355, 357, 112 N.W.2d 364, 365 typifies our approach:

> "We are not justified in erecting a bar where the legislature did not so provide. The express mention of the one thing implies the exclusion of the other. This rule is expressed in the often quoted Latin phrase 'expressio unius est exclusio alterius.' We have said: 'The legislative intent is expressed by omission as well as by inclusion.' " (citing cases)

For similar applications of this rule, see State v. Flack, 251 Iowa 529, 533, 101 N. W.2d 535, 538 (1960); Everding v. Board of Education, 247 Iowa 743, 750–751, 76 N.W.2d 205, 210 (1956); Pierce v. Bekins Van & Storage Co., 185 Iowa 1346, 1350, 172 N.W. 191, 192 (1919).

Majority's opinion judicially grafts onto this legislation (ch. 613A) as an additional exception to the imposition of municipal liability. This type of judicial legislation not only violates constitutional separation of powers but ignores appropriate rules of statutory construction long followed by this court. Under these rules we should hold the legislature meant precisely what it said in attempting to abolish municipal immunity save in the enumerated excepted areas.

This case vividly demonstrates the deceptive strength of the governmental immunity doctrine. Although universally condemned by legal scholars, it continues to live, supported not by its power to persuade but by its ability to arouse unwarranted judicial fears of the consequences of overturning it. We do not accept the remedy offered by this legislation to the problems we judicially created over so long a time. Why should not a municipal corporation be held liable for the failure of its employees to act as reasonably prudent men under the circumstances? To flinch from the concept that for such a wrong as plaintiff pleaded there is a remedy is to reject the very philosophy of a body of developing case law, attuned to requirements of a complex and changing society. This court should not emulate the prisoner who is lost without his irons and embraces their return. If municipal governmental immunity is to be restored under these facts, then the legislature will find it convenient to simply extend the exemptions itemized in § 613A.4. This court should take no part in such retreat.

The district court should be reversed, the motion to dismiss overruled, and the case remanded.

BECKER, J., joins in this dissent.

UHLENHOPP, J., joins in Division II of this dissent.