IRVING FINKELSTEIN, as Trustee in Bankruptcy of LOUIS WINOKUR, Plaintiff, *v.* CITY OF NEW YORK, Defendant.

Supreme Court, Special Term, New York County, March 13, 1944.

*Ignatius M. Wilkinson, Corporation Counsel* (*Frank J. Horan, Murray Sendler* and *Philip E. Birman* of counsel), for defendant.

*Milton Mitwell* for plaintiff.

STEUER, J. This motion originally brought to dismiss the complaint on the ground that the action was not commenced within the time limited by statute has been, by stipulation, changed to one to test whether the complaint states a cause of action.

The complaint alleges that the plaintiff is the duly appointed trustee in bankruptcy of Louis Winokur. Winokur was the owner and occupant of the premises located at 2174 Fifth Avenue on the first and second of August, 1943. It is alleged that on those days a mob assembled before the premises, broke in and destroyed the stock and fixtures and also the good will of the bankrupt's business. It is further alleged that the bankrupt was without fault and took all measures to prevent the destruction which took place. Concededly, the complaint describes an incident of the much publicized Harlem riot.

It is undisputed that these facts would have given rise to an action against the City by virtue of section 71 of the General Municipal Law. However, subdivision 2 of section 40 of the New York State War Emergency Act (L. 1942, ch. 445, as amd. by L. 1942, ch. 544, eff. May 1, 1942; Act extended to July 1, 1944, by L. 1943, ch. 171, § 14) provides that the provisions of section 71 above referred to shall be inoperative and shall not apply to property destroyed or injured by mobs or riots. It is not disputed that the War Emergency Act was in effect at the time involved in this complaint.

In this situation the plaintiff advances three contentions. The first is that the Legislature in the provisions of the War Emergency Act did not intend to affect the remedial provisions of section 71 in a situation such as this. It is claimed that the purpose of the legislation as expressed in the title was to establish the New York State War Council and to provide emergency governmental powers and agencies for civilian protection and aiding the war effort. That is hardly a sufficient indication of legislative intent to nullify an express and unambiguous direction. It cannot be claimed the purpose was to relieve municipalities from the payment of damages caused by invading troops or air raids because there was no such liability

imposed in the original statute. It is much more likely that the legislative purpose was to divert the instrumentalities usually held in reserve by municipalities for protection against civil riot to the. defense of the nation and encourage this by relieving the cities from the consequences during the emergency period.

The second contention is that the repealer is unconstitutional in that it is a deprivation of property without due process of law. The argument is not based on any claim that the repealing statute constitutes an attainder, in that the repeal prevents the recovery of a claim which had matured during the effective period of the statute rendered inoperative. It is that the Legislature may not suspend an inchoate property right. This depends on the nature of the right. If it is purely statutory, created by the Legislature, no precedent has been advanced to suggest that the Legislature cannot take away what it has previously conferred. If the right of action antedated the statute, the repealer is limited to the statutory method of procedure and does not affect the right.

This leads to the final contention that the right to recover against the municipality for the consequences of a riot was a common-law right and hence not affected by the War Emergency Act, except possibly insofar as the original statute may have extended the common-law right. The existence of a common-law right may be shown in various ways but the most satisfactory and conclusive method is by instances of its exercise through the medium of decision. No such instance in this or any other jurisdiction has been cited, nor is it probable that any exists. The next source of inquiry would be in the opinions written in suits on the statute as to the nature or origin of the statutory right. Perhaps, on this subject the leading case in this jurisdiction is *Marshall* v. *City of Buffalo* (50 App. Div. 149, 152, 155, affd. 176 N. Y. 545), where LAUGHLIN, J., wrote: " The only liability on the part of the municipality in the premises is that imposed by the statute, and, therefore, the sole question presented is whether the plaintiff was entitled to have the case submitted to the jury, to find whether the property was destroyed by a mob or riot within the meaning and intent of the statute." Further discussing the liability created he said: " It is an extension of the ancient English law which made the inhabitants of the respective hundreds liable for burglaries and unlawful destruction of property." In *Darlington* v. *Mayor, &c., of New York* (31 N. Y. 164) the question of the constitutionality of the statute (then L. 1855, ch. 428) was raised. The court pointed out that the Act is similar to many

English statutes, some of great antiquity, and that its enactment was within the general powers of the Legislature. In discussing a similar statute of the State of Illinois the United States Supreme Court said: "It is also a general principle of the same law that a loss from any cause purely accidental must rest where it chances to fall. But behind and above these general principles which the law recognizes as ordinarily prevailing, there lies the legislative power, which, in the absence of organic restraint, may, for the general welfare of society, impose obligations and responsibilities otherwise non-existent." (*City of Chicago* v. *Sturges,* 222 U. S. 313, 322.) Quite clearly the attitude of all these writers is that the right originated with the statute which neither codified nor supplemented any existing right in the common law. The only contrary expression discovered reads: "From all these citations it is certain that, while the common law may recognize the principle that a municipality should preserve social order at some risk of being punished for failure, the particular form of liability now before the court rests wholly upon statute." (*Wells Fargo & Co.* v. *Mayor, etc., of Jersey City,* 219 F. 699, 700.) The possibility referred to arises from the mention in the therein-cited cases of the English decisions. But when these are examined they are found to be rigid interpretations of the statutes involved (e. g., *Groasley* v. *Higginbottom,* 1 East 636) with the strictest possible construction against the plaintiff (*Hiles* v. *The Hundred of Shrewsbury,* 3 East 457). The conclusion is inevitable that the right did not exist here prior to the statute and has no existence apart from it.

The motion to dismiss is granted.