WESTMINSTER INVESTING CORPORATION

v.

G. C. MURPHY COMPANY, Appellant,
District of Columbia.

No. 23125.

United States Court of Appeals,
District of Columbia Circuit.

Argued June 25, 1970.

Decided Oct. 12, 1970.

Mr. Thomas N. Griggs, Pittsburgh, Pa., of the Bar of the Supreme Court of Pennsylvania, *pro hac vice*, by special leave of Court, with whom Messrs. Donald C. Bush, Pittsburgh, Pa., and Thomas M. O'Malley, Washington, D. C., were on the brief, for appellant.

Mr. John R. Hess, Asst. Corporation Counsel for the District of Columbia, with whom Messrs. Hubert B. Pair, Acting Corporation Counsel, and Richard W. Barton, Asst. Corporation Counsel, were on the brief, for appellee District of Columbia.

Before WILBUR K. MILLER, Senior Circuit Judge, ROBB, Circuit Judge, and DAVIS*, Judge, United States Court of Claims.

DAVIS, Judge:

Appellant G. C. Murphy Company held a lease on real estate at 3128–3130 14th Street, N.W., in the District of Columbia, owned by Westminster Investing Corporation. During the riots which followed the assassination of Dr. Martin Luther King in April 1968, these premises and property in them were destroyed. Westminster filed suit against Murphy after the latter denied liability for repairs under the lease. Murphy impleaded the District of Columbia, alleging it was liable to the company for negligence and abandonment of duty in failing to train its police

properly in riot-control methods, and also to provide adequate protection during the eruptions. This responsibility was asserted in two ways: In a third-party complaint, Murphy charged that the District was liable to it for all sums recovered against it by Westminster. In a separate complaint against the third-party, Murphy sought recovery for loss of inventory, other personal property and profits. The total sum claimed against the District was $936,613. Liability, according to the allegations, was based on the duty of the District of Columbia to protect life and property during riots.

The District, relying solely on the pleadings, moved to dismiss the complaints on the grounds that (1) they failed to state claims for which relief could be granted, and (2) that, in any event, sovereign immunity precluded suit. The District Court, of the view that the "municipal officials were exercising discretion in the performance of a governmental function", held that Murphy's complaints failed "to state a claim upon which relief can be granted", and granted the District of Columbia's motion to dismiss. 296 F. Supp. 1300 (1969). Murphy appeals from that order.[1]

The gravamen of appellant's case is an alleged violation of the District of Columbia's "duty and obligation to: [(a)] Prevent, control and suppress eruptions of people, mobs * * * riots * * * and other breaches of the peace * * * [and (b)] suppress violence * * * and other such acts and casualties which result in loss of life, personal injuries and property damage." As appellant notes in its brief, "liability of the District was alleged on the basis that it had the duty to protect life and property during the riots. * * * *" More specifically, Murphy claims the

* Sitting by designation pursuant to Title 28, U.S.Code, Section 293(a).

1. In the same memorandum-order, the court granted Westminster's motion for summary judgment against Murphy. The

original action of Westminster against Murphy has since been settled and discontinued, and we are not concerned with the grant of summary judgment in Westminster's favor.

District was negligent (or worse) in performing its duty of training the police in riot-control,[2] and that it abandoned its obligation to afford protection during mob violence by refusing to take the necessary measures to suppress the rioters. This position raises, of course, the basic question of whether the District was, in the eyes of the law, under the obligation to Murphy which that party asserts to have been negligently executed and deliberately abandoned.

Up to now, the unvarying response which the courts have given to this query is that, in the absence of legislation, municipalities and other governmental bodies are not pecuniarily responsible for destruction and injury wreaked by rioting mobs. See Louisiana ex rel. Folsom v. Mayor and Administrators of New Orleans, 109 U.S. 285, 287–288, 3 S.Ct. 211, 27 L.Ed. 936 (1883); Turner v. United States, 248 U.S. 354, 357–358, 39 S.Ct. 109, 63 L.Ed. 291 (1919); Shelton v. City of Chicago, 42 Ill.2d 468, 248 N.E.2d 121, 124, 125, cert. denied, 396 U.S. 906, 90 S.Ct. 222, 24 L.Ed.2d 182 (1969); Silver v. City of Minneapolis, 284 Minn. 266, 170 N.W. 2d 206, 207, 209–210 (1969); Wakeley v. Douglas County, 109 Neb. 396, 191 N.W. 337, 339 (1922); Finkelstein v. City of New York, 182 Misc. 271, 47 N.Y.S.2d 156, 159 (1944), aff'd 269 App. Div. 662, 53 N.Y.S.2d 465 (1945), aff'd 295 N.Y. 730, 65 N.E.2d 432 (1946); Note: Compensation for Victim of Urban Riots, 68 Col.L.Rev. 57, 65–67 (1968); Comment: The Aftermath of the Riot: Balancing the Budget, 116 Pa. L.Rev. 649, 659–662 (1968); cf. City of Chicago v. Sturges, 222 U.S. 313, 32 S.Ct. 92, 56 L.Ed. 215 (1911). No reported case holds a governmental body liable in these circumstances, or indicates that there could be liability without a statute or ordinance. All the statements by courts are the other way.

It is agreed that there is no such legislation for the District of Columbia. The problem for us, then, is whether we should move beyond the general rule and judicially create, for the District, a new principle of municipal responsibility. We will not do so. On two major grounds, we consider it just and appropriate to follow the accepted understanding that liability should be imposed, if at all, by the cognizant legislative body, not by the judiciary acting on its own.

The first factor is the extremely broad scope of the policy choices to be made in deciding whether there should be liability and, if so, in formulating the rules. A survey of the score or less of current state statutes authorizing compensation, and of the various other proposals which have been made, shows the wide range of decisions necessarily facing the law-creating body. See Note, *supra*, 68 Col. L.Rev. at 67–75; Comment, *supra*, 116 Pa.L.Rev. at 684 ff.; Note: Municipal Liability for Riot Damages, 81 How.L. Rev. 653 (1968); Comment: Riot Insurance, 77 Yale L.J. 541 (1968); Broach, Municipal Liability for a Policy of Permitting Riot Damage, 47 Tex.L.Rev. 633 (1969); Symposium, Governmental Compensation for Victims of Violence, 43 S.Cal.L.Rev., No. 1 (1970). Shall responsibility be imposed without fault on the part of the governmental entity or only if fault is proved, and if the latter what extent of fault should be enough? If some sort of culpability is made a prerequisite, should there be an exception for high-level "discretionary" determinations? Or is it preferable, on the whole, to adopt a scheme of participatory insurance? Shall there be recovery for personal injury as well as for property loss? With respect to property damages, what elements should be included—merely the actual value of lost or destroyed physical property, or also lost profits, or business opportunities, and other intangible losses? Is there to be a top

2. The claim with respect to police training was included in a proffered amendment to the third party's complaint, which we have considered as if it had been originally incorporated in that pleading.

limit on awards, either a flat monetary sum or a percentage figure? Can adequate financial resources for the payments be made available?[3] Shall coverage be extended to the victim alone or may his insurer stand in his shoes? Shall the compensation plan be executed through an administrative mechanism or shall the courts be used? The existing legislation embodies different answers to this set of questions, as do the suggestions put forth by scholars; no true consensus has as yet emerged.

There is, in addition, the fundamental moral-social problem of whether the right to recover should be restricted to victims of riots or whether, if those individuals are covered, it is proper to exclude the victims of more solitary crimes committed in comparable circumstances (e. g. a robbery made more probable because of a failure to extend adequate police coverage to the victim's area). In other words, should a distinction be made in favor of riot-caused injury or should the consequences of all crime be covered? One can even push further and wonder whether compensation should be given for crime-caused injury if it is not given for other faulty governmental action which causes economic or physical harm to businessmen or citizens—for example, the kind of conduct excepted from the reach of the Federal Tort Claims Act by the "discretionary function" exception, 28 U.S.C. § 2680(a), or some culpably injurious economic or fiscal policies and determinations.

This sheaf of considerations—typical of the problem—is much more suitable grist for a legislative body than for a court. It is not only that legislatures can, more easily and more comprehensively, obtain and evaluate the necessary information as to the differing financial impacts of the various methods of assessing responsibility. Even if full information were readily available, the multiple elements entering into the choice are of the kind with which legislatures rather than courts generally deal; in particular, the hard task of weighing one factor against the mass of others calls upon a type of practical and "political" judgment courts do not normally exercise (at least in the non-constitutional area). Moreover, courts are hobbled in molding both coverage and remedies. A statute or ordinance has far greater freedom to make choices as to breadth of coverage, or to establish limits, than a court—and this happens to be preeminently a field crowded with such choices. A legislature, for instance, can place an "arbitrary" monetary maximum on recovery, but a court can hardly do so; a legislature, but not a court, can confine the right to property damage alone. By the very nature of their task and their functioning, legislatures can more readily take account of pragmatic factors, and stop short of applying a principle to the full extent of its innate logic. They can experiment and draw peremptory lines in a way courts cannot.[4]

The second, closely related, reason moving us to await legislative action is that that has been the historical development in this sector of the law. In this special area, the legislatures have always taken the lead. The reasons are implicit in what we have already said: the nature

---

3. In this connection, there is the question of whether the Federal Government should share in the District's responsibility, just as the issue has been raised whether the states should not aid their cities in compensating riot victims. See Comment, *supra*, 116 Pa.L.Rev. at 663, Note, *supra*, 81 Harv.L.Rev. 653, 656; Comment, *supra*, 77 Yale L.J. 541, 558.

4. One instance of such peculiarly legislative choice is the repeal or temporary suspension of a compensation provision. Three states (California, Illinois, and Louisiana)

have repealed, relatively recently, their riot-damage reimbursement statutes, and New York has suspended its legislation. See Note, *supra*, 68 Col.L.Rev. 57, 79; Shelton v. City of Chicago, 42 Ill.2d 468, 248 N.E.2d 121, cert. denied, 396 U.S. 906, 90 S.Ct. 222, 24 L.Ed.2d 182 (1969); Finkelstein v. City of New York, 182 Misc. 271, 47 N.Y.S.2d 156 (1944), aff'd 269 App.Div. 662, 53 N.Y.S.2d 465 (1945), aff'd 295 N.Y. 730, 65 N.E.2d 432 (1946); *cf.* Hart's Food Stores, Inc. v. City of Rochester, 44 Misc.2d 938, 255 N.Y.S.2d 390 (1965).

of the factors to be evaluated; the wide spectrum of options; the shaping of the possible remedies. Even in the general field of tort liability, Congress, when it came to impose that responsibility on the Federal Government, elected to hedge the Tort Claims Act with explicit exceptions and qualifications, see 28 U.S.C. § 2680, rather than to leave that problem to the judiciary. There has been, it is true, some erosion of the immunity of states and municipalities from suit, but this has mainly come about in those fields in which established patterns of responsibility have already been set through decades of litigation—the areas of contracts and of ordinary torts. In those segments the courts, to the extent they do away with immunity, are simply removing barriers to suit, not erecting new causes of action unknown to the developing common law. In contrast, by imposing municipal liability for riot-caused damage we would be marching straight into a difficult region, never before plotted by courts acting alone.

It is not unknown for courts to refuse, without passing on its "rightness", to recognize a claim until the legislature (or, in proper cases, the executive) has acted. *Cf.* United States v. Standard Oil Co., 332 U.S. 301, 67 S.Ct. 1604, 91 L. Ed. 2067 (1947); Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318; United States v. Atlantic Mutual Ins. Co., 343 U.S. 236, 242, 72 S.Ct. 666, 96 L.Ed. 907 (1952); United States v. Gilman, 347 U.S. 507, 74 S.Ct. 695, 98 L.Ed. 898 (1954); Banco Nat'l de Cuba v. Sabbatino, 376 U.S. 398, 427–433, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964); United States v. King, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). That is what we do here.[5] Without affirming or denying the ethical or social soundness of Murphy's demand, we hold that it cannot be redressed in the courts until the ap-

propriate legislative body transforms whatever non-legal right there may be into a legal claim. In the recent phrasing of Mr. Justice Harlan in a similar context (National Board of Young Men's Christian Ass'ns v. United States, 395 U.S. 85, 96, 89 S.Ct. 1511, 1518, 23 L.Ed.2d 117 (1969) (separate opinion): " * * * our decision today does not in any way suggest that the victims of civil disturbances are undeserving of relief. But it is for the Congress [or other legislative body], not this Court, to decide the extent to which those injured in the riot should be compensated, regardless of the extent to which the police or military attempted to protect the particular property which each individual owns."

Appellant says that, in any event, judicial relief should be available where (in the words of its complaints against the District) the municipality "intentionally abandoned" its duties and obligations to prevent and suppress rioting "by restricting and restraining the proper exercise" of its powers. Deliberate abandonment of the duty to maintain order is said to be of a different magnitude from mere negligence. But this characterization—"intentional abandonment"—is plain and unambiguous only on its surface. It masks such varied situations as (i) a deliberate refusal to use available police in the claimant's area even though those men could cope adequately with the situation there without harm to themselves or other innocent people; (ii) the allocation of the available police resources to areas other than the claimant's; (iii) an administrative decision not to use police (or to permit them to use guns) at a certain location because of danger to them or the likelihood of increasing or extending the general violence; or (iv) an administrative determination that to permit the use of guns would result in too many deaths or injuries to rioters (and perhaps

5. Compare Urow v. District of Columbia, 114 U.S.App.D.C. 350, 351 n. 2, 316 F.2d 351, 352 n. 2 (1963), cert. denied, 375 U.S. 826, 84 S.Ct. 69, 11 L.Ed.2d 59; Elgin v. District of Columbia, 119 U.S.App.D.C. 116, 117 n. 2, 337 F.2d 152, 153 n. 2 (1964).

others).[6] These situations of so-called "intentional abandonment" of duty all present problems quite comparable to those existing where negligence alone is charged. Hard and serious choices have to be made, and no more than in the case of alleged neglect are courts the appropriate forum for resolving the issues —when acting wholly on their own, without guidance or instruction. *Cf.* National Board of Young Men's Christian Ass'ns v. United States, *supra*, 395 U.S. at 95–96, 89 S.Ct. 1511, 23 L.Ed.2d 117 (separate opinion of Mr. Justice Harlan).

■ For similar reasons we reject appellant's plea that it should at least be allowed to complete its process of discovery. The court below dismissed the action against the District of Columbia before the Murphy Company had finished taking the depositions of District officials. This was not error since, as we are now holding, appellant can prove no set of facts in support of its claim which would entitle it to judicial relief. See Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Sass v. District of Columbia, 114 U.S.App.D.C. 365, 366, 316 F.2d 366, 367 (1963). Prolongation of the controversy would be wasteful and useless. More than that, since it is up to others, not to the courts, to decide whether the District should be held liable at all, it would be inappropriate for the judiciary, which can give no redress, to lend itself to a public probing of the conduct of District officials during the sad episodes of April 1968. *Cf.* Barr v. Matteo, 360 U.S. 564, 570–572, 575–576, 79 S.Ct. 1335, 3 L.Ed. 2d 1434 (1959).

■ We hold, therefore, that the Murphy Company has, at present, "no substantive right to recover the damages resulting from failure of a government or its officers to keep the peace" (Turner v. United States, *supra*, 248 U.S. at 358,

39 S.Ct. at 110, 63 L.Ed. 291).[7] On the allegations as Murphy has presented them, no additional facts could support its claim that the District would be liable for damages inflicted during the riots of April 1968. The District Court properly granted the third-party defendant's motions to dismiss the complaints, without requiring completion of appellant's discovery proceedings.

Affirmed.

WILBUR K. MILLER, Senior Circuit Judge, concurs in the result.

---

6. Appellant's complaints do not spell out its charge of "intentional abandonment" of duty, and what further detail is suggested in the briefs could well fall under the second, third, or fourth classes, rather than the first.

7. Accordingly, it is unnecessary to consider whether the District could be sued if a cause of action did exist substantively.