COASTAL STATES GAS CORPORA-
TION, Plaintiff,
v.
DEPARTMENT OF ENERGY et
al., Defendants.
Civ. A. 79–267.
United States District Court,
D. Delaware.

Oct. 5, 1979.

On Motion for Reconsideration
Nov. 21, 1979.

William O. LaMotte, III, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., Simeon T. Lake, III, Fulbright & Jaworski, Houston, Tex., for plaintiff.

James W. Garvin, Jr., U. S. Atty., and John X. Denney, Jr., Asst. U. S. Atty., Dept. of Justice, Wilmington, Del., Arthur E. Gowran, Deputy Asst. Gen. Counsel, and Janet L. Steckel, Regulatory Litigation Div., Washington, D. C., David L. Anderson and Ellyn S. Roth, Asst. Solicitors to the Sp. Counsel for Compliance, Washington, D. C., for defendants.

## OPINION

Murray M. SCHWARTZ, District Judge.

The Court is presented with Plaintiff's Motion for Expedited Discovery and to Postpone Consideration of Plaintiff's Motion for Preliminary Injunction and Defendant's Motion to Dismiss and with Defendant's Motion to Stay Further Discovery. Arguments were heard on September 20, 1979. For the reasons set forth in this opinion, plaintiff's motion will be granted and defendant's motion will be denied.

### I. BACKGROUND

Plaintiff Coastal States Gas Corporation ("Coastal") seeks injunctive relief as to certain alleged infirmities in an administrative proceeding being conducted by defendant Department of Energy ("DOE"). DOE's Office of Special Counsel for Compliance ("OSC") issued a Proposed Remedial Order ("PRO") to Coastal on September 6, 1978. The PRO alleged that 33 sales of petroleum products to 18 separate customers by plaintiff's subsidiary, Coastal States Marketing, Inc., were regulated sales, requiring inclusion of them in Coastal's monthly reports to the DOE and its predecessor agencies. Coastal's challenge to the PRO was to be adjudicated by DOE's Office of Hearings and Appeals ("OHA").

On November 21, 1978, according to Coastal, OSC requested of OHA that all of Coastal's customers involved in the 33 transactions be afforded the opportunity to participate in the PRO proceeding as "aggrieved parties." DOE, on the other hand, alleges simply that, "Shortly after the issuance of the PRO, several public utilities and firms which purchased refined product from Coastal in the sales at issue in the PRO notified OHA of their desire to participate in the proceeding." (Defendant's Memorandum in Support of Motion to Dismiss, at 9) After an unsuccessful effort to file objections to inclusion of the customers, Coastal was notified by OHA on December 12, 1978 that the customers were potentially aggrieved parties and should be served with subsequent filings. Coastal's motion to va-

cate this December 12 order was denied by OHA on January 2, 1979.

In a further effort to challenge this determination, Coastal, on March 20, 1979, filed with OHA a "Petition for Special Redress or Other Relief," pursuant to 10 C.F.R. § 205.230. OHA rulings on such petitions are final orders, from which immediate judicial review is available. Rather than granting or denying the petition as it had been styled by Coastal, OHA construed the petition as a "Motion to Limit Participation" in the context of the ongoing PRO proceeding. This motion was denied by OHA on April 30, 1979. OHA stated further in that order that its decision was interlocutory in nature, and subject to appeal only upon the issuance of a final decision and order in the PRO proceeding.

Coastal's final effort to appeal the customer participation decision administratively took the form of a May 30, 1973 Notice of Appeal to the Federal Energy Regulatory Commission ("FERC"). On July 5, 1979, FERC ultimately rejected Coastal's appeal for lack of jurisdiction.

Perhaps anticipating the outcome of its appeal to FERC, Coastal commenced the instant litigation on June 5, 1979. Subsequent to the decision by FERC, Coastal filed its motion for a preliminary injunction on July 23, 1979. Coastal alleged therein that it has suffered, and will continue to suffer, irreparable harm by virtue of the erroneous inclusion of the customers in the PRO proceeding, the failure of DOE to follow its own regulations, and the unauthorized restyling and denial of its Petition for Special Redress.

DOE, in addition to answering the motion for a preliminary injunction, filed a motion to dismiss on August 15, 1979. DOE contends this Court lacks jurisdiction over this litigation because the controversy is not ripe for adjudication.[1] DOE argues that Coastal cannot make a concrete showing of harm from OHA's decision until a final order, adverse to Coastal, emanates from the PRO proceeding, and judicial review should await such an outcome.

## II. THE DISPUTES CONCERNING DISCOVERY

As a result of information obtained from DOE in a separate Freedom of Information Act action, Coastal claims to have discovered evidence bearing on the instant litigation. Specifically, Coastal alleges that certain *ex parte* communications took place between OHA and OSC and between OHA and one or more of Coastal's customers.

Coastal filed a supplemental complaint on September 5, 1979 in which it asserts these *ex parte* communications led unlawfully to the inclusion of the customers in the PRO proceeding, and to the decision of OHA to restyle Coastal's Petition for Special Redress in an effort to preclude judicial review. The supplemental complaint alleges that OHA was prejudiced, biased and had prejudged the question of customer participation, without the benefit of Coastal's views, thereby constituting a fundamental denial of Coastal's right to due process.

Coastal simultaneously filed a motion for expedited discovery and to postpone consideration of DOE's motion to dismiss and its own motion for a preliminary injunction. Coastal seeks the admission by DOE of 39 allegations, and seeks to depose Wayne P. Weiner, an employee of OHA.[2] Coastal states this discovery is intended to explore further the occurrence of *ex parte* communications, their subject matter, and the participants therein.

On September 12, 1979, DOE moved to stay further discovery pending resolution of its motion to dismiss. As more fully discussed below, DOE argues that a decision granting its motion to dismiss will eliminate any need for the discovery sought by Coastal.

At this point, the procedural posture of the case deserves some attention. Prior to the filing of the supplemental complaint,

---

1. DOE also contends, albeit not vigorously, that Coastal has failed to exhaust its administrative remedies. The considerations governing disposition of these motions relating to discovery are equally applicable to claims of ripeness and exhaustion. *See* note 3, *infra.*

2. While Mr. Weiner's exact position and duties are as yet unspecified, DOE has indicated that he is involved in the OHA decision making process.

the Court, in agreement with the parties, had scheduled a September 20, 1979 hearing to consider both the motion for a preliminary injunction and the motion to dismiss. Coastal's brief in opposition to the motion to dismiss, the last filing necessary to hear these motions, was due September 7. With the addition of the supplemental complaint and these motions concerning discovery, the Court postponed consideration of the motion for a preliminary injunction and the motion to dismiss. Since resolution of the discovery motions undoubtedly will have a bearing on Coastal's response to the motion to dismiss, Coastal has been granted leave to postpone that response. Thus, briefing has not been completed on the motion to dismiss, and no opinion is expressed herein as to its merits.

## III. DISCUSSION

DOE argues that its motion to dismiss for lack of ripeness is dispositive of the issues in this case. Since the conduct complained of has not resulted in a final order adverse to Coastal, DOE contends no concrete issue is presented, and the Court consequently lacks jurisdiction over the subject matter of the lawsuit. It urges further that the facts sought to be adduced by Coastal in its discovery requests address the merits of Coastal's claim for injunctive relief.

■ It is within the sound discretion of the Court to postpone discovery of issues relating to the merits of a case pending resolution of potentially dispositive motions. *Westminster Investing Corp. v. G. C. Murphy Co.,* 140 U.S.App.D.C. 247, 434 F.2d 521 (D.C.Cir.1970); *Allied Poultry Processors Co. v. Polin,* 134 F.Supp. 278 (D.Del.1955); *Klein v. Lionel Corp.,* 18 F.R.D. 186 (D.Del. 1955). Indeed, such a procedure is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial re-

sources. 140 U.S.App.D.C. at 252, 434 F.2d at 526. If DOE's characterizations of the issues Coastal is pursuing are correct, and they are in fact irrelevant to the question of jurisdiction, postponement of discovery would be appropriate. ·

■ Conversely, discovery should precede consideration of dispositive motions when the facts sought to be discovered are relevant to consideration of the particular motion at hand. *Canavan v. Beneficial Finance Corp.,* 553 F.2d 860, 865 (3d Cir. 1977); *Fraley v. Chesapeake & Ohio Ry. Co.,* 397 F.2d 1 (3d Cir. 1968).

Postponement or expedition of further discovery in the instant case therefore hinges on whether the line of inquiry to be pursued by Coastal will bear on DOE's pending motion to dismiss for lack of ripeness.

As stated above, Coastal's request for expedited discovery seeks to uncover evidence of illegal *ex parte* communications that will demonstrate that OHA is prejudiced, biased, and had prejudged the issue of customer participation in the PRO proceeding. The Court of Appeals for the Third Circuit very recently has embraced the position that:

> [A]llegations of agency bias or prejudgment based on *ex parte* communications are insufficient for injunctive relief and cannot be reviewed until the agency has made an adverse determination and an appeal has been taken raising these claims on the record as a whole.[3]

*First Jersey Securities, Inc. v. Bergen,* 605 F.2d 690, 699 (3d Cir. 1979).

■ It would appear at first blush that *First Jersey* requires consideration of DOE's ripeness argument without evidence of *ex parte* communications. Closer examination reveals, however, that under certain limited circumstances, agency bias or prejudice may create an infirmity in the adminis-

---

**3.** The issue in *First Jersey* was one of exhaustion of administrative remedies rather than ripeness. While those two doctrines are "distinct and not interchangeable," *United States ex rel. Ricketts v. Lightcap,* 567 F.2d 1226, 1232 (3d Cir. 1977), the "policies underlying the exhaustion doctrine are similar to those supporting the ripeness doctrine." *Phillips Petroleum Co. v. Federal Energy Administration,* 435

F.Supp. 1239, 1248 (D.Del.1977), *aff'd sub nom. Standard Oil Co. v. Department of Energy,* 596 F.2d 1029 (Temp.Emer.Ct.App.1978). In the context of the instant case, both doctrines are concerned with avoiding premature judicial interruption of administrative proceedings. The logic of *First Jersey* would seem to apply with equal force to the ripeness issue presented here.

trative proceeding of such a fundamental nature as to justify immediate District Court review. Several cases are illustrative.

In *R. A. Holman & Co. v. S.E.C.,* 112 U.S.App.D.C. 43, 299 F.2d 127 (D.C.Cir.), *cert. denied,* 370 U.S. 911, 82 S.Ct. 1257, 8 L.Ed.2d 404 (1962), mere allegations of *ex parte* communications between the Commissioners and the SEC investigatory staff were held insufficient to confer jurisdiction on the District Court to enjoin the administrative proceeding. *Id.* at 130. Similarly, *Nader v. Volpe,* 151 U.S.App.D.C. 90, 94–97, 466 F.2d 261, 265–68 (D.C.Cir.1972), affirmed the District Court's dismissal for lack of jurisdiction where plaintiff alleged unlawful *ex parte* contact of Department of Transportation officials by members of the White House staff. Both decisions required the plaintiffs instead to preserve the issue of bias in the administrative proceeding, and raise it upon an eventual appeal of final agency action.

Immediate review of alleged agency bias was permitted in *Amos Treat & Co. v. SEC,* 113 U.S.App.D.C. 100, 306 F.2d 260 (D.C.Cir. 1962). There, in addition to allegations of *ex parte* communications, plaintiff showed by uncontroverted evidence that a recently appointed Commissioner, who would be ruling· on the merits of the case, was formerly an active participant in the staff investigation of the very same case. Amos Treat thus was able to demonstrate an infirmity serious enough to bring the fairness of the entire proceeding into question.[4] *See also Fitzgerald v. Hampton,* 152 U.S.App.D.C. 1, 14–15, 467 F.2d 755, 768–69 (D.C.Cir.1972) (District Court had jurisdiction to review immediately agency decision to conduct closed, rather than open, hearing because infirmity fundamental).

■ This Court in no way concludes that Coastal has shown, or will be able to show, such a fundamental deprivation of due process as is necessary to justify immediate review of the PRO proceeding. Nevertheless, Coastal must be given a fair opportunity to discover whether those factors that would rebut DOE's jurisdictional claim are present in this case.

The Court also notes that Coastal's motion for a preliminary injunction will be heard at the same time as DOE's motion to dismiss. Since Coastal's allegations of *ex parte* communications bear on its request for a preliminary injunction, discovery on that issue should precede the hearing. In accordance with the schedule set forth in the attached order, plaintiff's motion for expedited discovery will be granted, and defendant's motion to stay further discovery will be denied.

## ON MOTION FOR RECONSIDERATION

Defendants Department of Energy, *et al.* ("DOE"), seek reconsideration of this Court's October 5, 1979 Order granting the motion of plaintiff Coastal States Gas Corporation ("Coastal") for expedited discovery and denying DOE's motion to stay further discovery. In addition, DOE has moved to quash the Request for Admissions, the Notice of Deposition of Wayne Weiner submitted by Coastal on September 5, 1979, and any further discovery submitted. For the reasons set forth in this opinion, the motion for reconsideration and motion to quash will be denied.

While it is unnecessary to restate the entire factual context in which this dispute arises,[1] several items of particular relevance warrant discussion. The discovery sought by Coastal flows from its September 5, 1979 Supplemental Complaint. Coastal alleges therein that certain *ex parte* communications led unlawfully to the inclusion of the customers in the Proposed Remedial Order ("PRO") proceeding, and to the decision of the Office of Hearings and Appeals

---

4. The Court in *Amos Treat* also noted, however, that allegations of *ex parte* communications between the SEC staff and the Commission, without the additional factor of the dual role of one Commissioner in the case, "might have developed not to be of a fundamental nature." 113 U.S.App.D.C. at 102, 306 F.2d at 261–62.

1. The facts are set forth in my October 5, 1979 Memorandum Opinion, at 280–282.

("OHA") to restyle Coastal's Petition for Special Redress in an effort to preclude judicial review.

Coastal does not limit its claim to the assertion that *ex parte* communications may have prejudiced the decision-maker and could lead to an eventual adverse ruling. Rather, it asserts that OHA had prejudged the issue of customer participation, and that the *ex parte* communications were initiated in order to accomplish the inclusion of the customers, to deny Coastal the right to a fair and impartial hearing, and to insulate the decision from immediate judicial review.

DOE had moved to dismiss the initial complaint, urging a lack of ripeness and failure by Coastal to exhaust administrative remedies. DOE objected to the discovery sought by Coastal on the ground that it was irrelevant to the issues raised in the potentially dispositive motion to dismiss. In its motion for reconsideration, DOE continues to pursue this argument, focussing principally on this Court's interpretation of the holding in *First Jersey Securities, Inc. v. Bergen*, 605 F.2d 690 (3d Cir. 1979).[2] Specifically, DOE contends that *ex parte* communications such as those alleged to have taken place in the instant case do not create fundamental infirmities in the administrative process; that such fundamental infirmities must appear from uncontroverted evidence; and that discovery regarding the alleged *ex parte* communications is inappropriate and should not be allowed.

The Court is presented with a case that differs materially from *First Jersey* and other decisions dealing with immediate District Court review of alleged irregularities in the administrative process. Three distinct categories emerge from a review of those cases.

■ In the first group, District Court review is denied where the agency conduct forming the basis for the complaint is not sufficiently egregious or has not resulted in a fundamental infirmity. Particularly where assertions of bias and *ex parte* communications are made, these claims are "unlikely to allege a constitutional violation that has already occurred." *Id.* at 700. *See also United States v. Litton Industries, Inc.*, 462 F.2d 14, 17 (9th Cir. 1972) (allegations of bias and resulting harm "purely speculative"). Thus, a claim of *ex parte* communications between agency officials and one party before that agency, without more, should await final agency action before judicial review is available. *See R. A. Holman & Co. v. SEC*, 112 U.S.App.D.C. 43, 46, 299 F.2d 127, 130 (D.C.Cir.), *cert. denied*, 370 U.S. 911, 82 S.Ct. 1257, 8 L.Ed.2d 404 (1962); *Amos Treat & Co. v. SEC*, 113 U.S. App.D.C. 100, 101–02, 306 F.2d 260, 261–62 (D.C.Cir.1962).

■ In the second group, the District Court may interrupt the administrative process and grant immediate review where the constitutional or statutory infirmity is fundamental and the facts supporting the claim are uncontroverted. The District Court is able to rule on a discreet legal issue, and need not conduct a factual inquiry, a function more appropriately resting with the administrative agency. *See, e. g., Amos Treat & Co. v. SEC*, 113 U.S.App.D.C. 100, 306 F.2d 260 (D.C.Cir.1962); *Fitzgerald v. Hampton*, 152 U.S.App.D.C. 1, 467 F.2d 755, 768–69 (D.C.Cir.1972); *Association of Nat'l Advertisers v. FTC*, 460 F.Supp. 996, 998–99 (D.D.C.1978). The violations in these cases grew out of uncomplicated and uncontested facts, and the District Courts were not presented with requests for discovery to develop or illuminate the allega-

---

2. In its Memorandum in Support of Motion for Reconsideration and to Quash Discovery, DOE asserts that counsel for Coastal raised a new issue at the September 20, 1979 hearing to which DOE did not have an opportunity to respond. That issue, in essence, was the "fundamental infirmity" exception to the exhaustion doctrine. However, the transcript indicates that that issue was raised first by the

Court, prompted by a concern over the applicability of either *First Jersey Securities, Inc. v. Bergen*, 605 F.2d 690, 700, (3d Cir. 1979), or *Amos Treat & Co. v. SEC*, 113 U.S.App.D.C. 100, 110, 306 F.2d 260 (1962), to the instant case. The issue of the fundamental infirmity exception to the exhaustion of administrative remedies doctrine was not briefed, nor was either case cited by either litigant.

tions in the complaints. In *Fitzgerald,* for example, the plaintiff's claim was based upon the simple and unchallenged assertion that a Civil Service Commission hearing considering his reinstatement to employment had been ordered closed to the public and press.

The third group of cases denied immediate District Court review where the factual allegations supporting the claimed violation of the plaintiffs' rights were denied, or in some manner controverted, by the responding agency. In *Maremont Corp. v. FTC,* 431 F.2d 124, 128 (7th Cir. 1970), the defendants filed an affidavit stating that alleged *ex parte* communications had not taken place. Similarly, the Attorney General "vigorously" denied allegations of having prejudged the issue in *National Lawyers Guild v. Brownell,* 96 U.S.App.D.C. 252, 225 F.2d 552, 555 (D.C.Cir.1955), *cert. denied,* 351 U.S. 927, 76 S.Ct. 778, 100 L.Ed. 1457 (1956). These challenges to the allegations in the complaints were viewed as significant points of distinction by courts that did grant District Court review. *See Fitzgerald, supra,* at 768 n.64; *Association of Nat'l Advertisers, supra,* at 998 n.3.

The instant case does not fall into any of the three categories. The Court has been presented with allegations in the Supplemental Complaint, grounded at least in part upon DOE records of telephone conversations, which extend beyond claims of possible prejudice by virtue of *ex parte* contacts between the agency and the investigatory staff. Here it is contended that the agency embarked upon a course of action designed to include the customers in the PRO proceeding without affording Coastal an opportunity to be heard, and to prevent review of that decision. The Court is unwilling to conclude that these allegations, whether admitted or denied, are so insubstantial and speculative as to warrant dismissal under the first line of cases.

With respect to the second and third groups of cases, the allegations in the Supplemental Complaint are neither controverted nor uncontroverted at this point. DOE has offered no response denying or challenging Coastal's assertions. Consequently, the factors militating in favor of dismissal in the third group of cases do not exist here. By the same token, I decline in such a vacuum to reach a determination as to whether the alleged infirmity is fundamental. Such a significant constitutional ruling should not be made until the record reflects that a factual dispute does or does not exist.

If the DOE responses to Coastal's discovery requests confirm the factual allegations of the Supplemental Complaint, the Court can rule on the isolated legal issue presented. Alternatively, if these allegations are contested, whether in the discovery responses or otherwise, dismissal for development of a factual record before the administrative body may be required.[3] On the present record of this case, the discovery authorized by the October 5 Order is relevant to the jurisdictional question presented in DOE's pending motion to dismiss. "[W]here issues arise as to jurisdiction . . . discovery is available to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 n.13, 98 S.Ct. 2380, 2390 n.13, 57 L.Ed.2d 253 (1978).

Given this denial of its motion for reconsideration and to quash discovery, DOE has requested that the issues addressed in the October 5, 1979 Order and accompanying Memorandum Opinion be certified to the Temporary Emergency Court of Appeals ("TECA") for review pursuant to 28 U.S.C. § 1292(b). Inasmuch as no "controlling question of law" is involved, nor will immediate review materially advance the ultimate termination of this litigation, the requested certification will be denied.

---

3. Again, the Court notes that Coastal has yet to respond to DOE's motion to dismiss, and no opinion is expressed on its ultimate disposition.