**BILOON'S ELECTRICAL SERVICE, INC., a Delaware Corporation, Arthur A. Biloon and Irene F. Biloon, Plaintiffs-Appellants,**

v.

**CITY OF WILMINGTON, a Municipal Corporation of the State of Delaware, Defendant-Appellee.**

Supreme Court of Delaware.

Submitted March 14, 1980.

Decided June 13, 1980.

Bayard Marin (argued), Wilmington, and C. Waggaman Berl, Jr., Wilmington, for plaintiffs-appellants.

Richard Galperin (argued) of Flanzer & Isaacs, Wilmington, for defendant-appellee.

Before DUFFY, McNEILLY and QUILLEN, JJ.

DUFFY, Justice:

This appeal from an order of the Superior Court presents one issue, namely: Is a municipality immune from liability as a matter of law for the (alleged) negligence of City firemen during a civil disturbance?

I

The facts are stated in the opinion of the Trial Judge, *Biloon's Elec. Serv. v. City of Wilmington*, Del.Super., 401 A.2d 636 (1979), to which reference is made. The few facts necessary to put this opinion in context are as follows:

On October 20, 1975, a "civil disturbance" developed in the City of Wilmington during which a number of fires were started. The area on which we focus is bordered by Third Street on the south, Fifth Street on the north, Broom Street on the west and Jackson Street on the east. Plaintiffs conducted a business at 1135 West Fourth Street, which is within that area.

Because of the fires, the Chief of Battalion Two of the Wilmington Bureau of Fire was called to the area, as were City police officials. The Fire Chief consulted with the police who informed him that "the temper of citizens in the area [is] at the breaking point." In view of the obvious dangers, the Chief ordered that fire apparatus not be dispatched to the area unless and until (a) a report of a fire was confirmed and, (b) arrangements were made for the firefighters to be escorted by the police. His concern for the safety of his men was justified: when the firefighters moved into the area in response to a confirmed call that plaintiffs' store was on fire, they were bombarded with bricks, bottles and other debris, and denied access to fire hydrants. Although police were on the scene, the bombardment continued until tear gas was used to disperse the rioters. The firefighters then donned breathing apparatus, connected the

hoses to the hydrants and moved in on the blaze. By the time the fire was brought under control, plaintiffs' store was virtually destroyed.

Plaintiffs sued the City of Wilmington for damages which they sustained from the fire, alleging that the City's negligence, that is, its failure to provide adequate and timely fire protection, was a proximate cause of the loss.[1]

The Trial Judge granted the City's motion for summary judgment. He held that plaintiffs' allegations of negligence were irrelevant because the City's actions were a product of "public policy considerations (riot control tactics)" and as such were insulated from judicial review.[2] Plaintiffs then docketed this appeal.

## II

We agree with the decision of the Trial Court and affirm its judgment, but on somewhat different grounds.

■ Under well established principles of law, a municipality does not have an actionable obligation to protect private property from riotous conduct and, for that reason, a citizen does not have a "substantive right to recover the damages resulting from failure of a government or its officers to keep the peace." *Turner v. United States*, 248 U.S.

354, 39 S.Ct. 109, 110, 63 L.Ed. 291 (1919); *Westminster Investing Corp. v. G. C. Murphy Co.*, D.C.Cir., 434 F.2d 521 (1970) (and cases cited therein). Instead, the right to compensation for riot damage "is simply a measure of legislative policy. . . ." *Louisiana ex rel. Folsom v. New Orleans*, 109 U.S. 285, 3 S.Ct. 211, 27 L.Ed. 936 (1883).

■ There is not a Delaware statute which establishes a right to recover damages sustained during a civil disturbance. Thus, to afford plaintiffs the possibility of relief we would have to "move beyond the general rule and judicially create . . . a principle of municipal responsibility." *Westminster*, supra, at 523. In taking such a step, we would necessarily be "marching straight into a difficult region, never before plotted by courts acting alone."[3] *Westminster*, supra, at 525. We decline to do so in this case.

For present purposes, we assume that, under common law principles, the Court may have the power to create a duty on the part of the City and a concomitant potential right of recovery on the part of plaintiffs. However, it is also true that we may refuse, "without passing on its 'rightness', to recognize a claim until the legislature (or, in proper cases, the executive) has acted."

1. Specifically, plaintiffs say that almost an hour elapsed between the time a call reporting the fire was made and the arrival of firefighting personnel. We accept this version of the facts for purposes of the motion for summary judgment. *Wilson v. Tweed*, Del.Supr., 8 Storey 391, 209 A.2d 899 (1965). Plaintiffs contend that there are genuine issues of fact as to when the fire was reported, when it was confirmed and why the City delayed in responding to the call. But it is undisputed, as we read the record, that all of these events occurred in the context of what plaintiffs say in their complaint was a "civil disturbance." Indeed, plaintiffs allege that the City failed "to prevent the said civil disturbance or to maintain control of said disturbance once it had begun." That means, as we read it, that plaintiffs seek to charge the City with liability for failure to keep the peace.

2. In a prior opinion in this case, the Superior Court had denied summary judgment regarding the question of delay in responding to the fire. The Judge did so because he was unable to determine why the City had failed to extinguish

the fire in a timely manner. After the record was supplemented by affidavits of the Battalion Chief and a Lieutenant of the Wilmington Bureau of Police, the Judge determined, as noted above, that any delay which had occurred was occasioned by policy considerations and, therefore, was not actionable as a matter of law.

3. The Court in *Westminster* articulated some of the difficult policy choices implicated in a decision to permit compensation for riot damage. For example, what standard of care should be required on the part of the governmental entity? And should relief be available for personal injury as well as property loss? Is there to be a top limit on awards, either a flat monetary sum or a percentage figure? These are only a few of many complex questions which would arise and, as *Westminster* notes, a true consensus regarding the proper answers has as yet not emerged. See also Comment, *The Aftermath of the Riot: Balancing the Budget*, 116 Pa.L. Rev. 649 (1968).

*Westminster,* supra; cf. *United States v. Standard Oil Co.,* 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947). In our opinion, the latter course is especially appropriate where, as here, selection of an approach involves a host of considerations that must be weighed and appraised. As the Supreme Court noted in *United States v. Gilman,* 347 U.S. 507, 512–13, 74 S.Ct. 695, 698, 98 L.Ed. 898 (1954), choosing a policy which is "most advantageous to the whole" is a "function [that] is more appropriate for those who write the laws, rather than for those who interpret them." For that reason, we determine, without suggesting in any way that riot victims are undeserving of relief, that plaintiffs' claim must be denied.

Affirmed.