**Pamela A. MacLEAN**

v.

**PARKWOOD, INC., and Charles J. Dumas.**

**Ruth Ellen GORDON**

v.

**PARKWOOD, INC., and Charles J. Dumas.**

**Civ. A. Nos. 2512, 2513.**

United States District Court
D. New Hampshire.
July 20, 1965.

Burns, Bryant & Hinchey, Stanley M. Burns, Dover, N. H., for plaintiff.

Devine, Millimet, McDonough, Stahl & Branch, Shane Devine, Manchester, N. H., for Parkwood, Inc.

Boynton, Waldron & Dill, Richard E. Dill, Portsmouth, N. H., for Charles J. Dumas.

CONNOR, District Judge.

This is a negligence action, arising out of a motor vehicle mishap. Jurisdiction is founded on diversity of citizenship. Plaintiffs in their complaints charged defendant Parkwood with negligent failure to erect and maintain reasonably suitable signs showing the proper entrance to and exit from defendant's restaurant, or negligent failure to prevent others from erecting and maintaining improper signs. Plaintiffs further alleged that such negligence caused plaintiffs, patrons of defendant's restaurant, to become confused upon exiting from the premises and as a result, that plaintiffs' car collided with the car of defendant Dumas, injuring the plaintiffs.

Defendant Parkwood answered, denying, among other things, that it had controlled or had the right to control the establishment and maintenance of exits or entrances from adjacent public ways, and denying that it had a right to control the erection or maintenance of entrance or exit signs.

Parkwood then moved for summary judgment, contending that certain depositions in the case showed that the land upon which its negligence was alleged to have occurred was public highway property. Parkwood asserted, in effect, that

it consequently had no duty to plaintiffs with respect to signs on that land, and indeed no right to put up highway or directional signs. Parkwood maintains, therefore, that it is entitled to judgment as a matter of law.

■ Parkwood attached certain depositions to its motion and at the hearing offered testimony of witnesses and documentary evidence tending to show ownership of the land in question. The Court permitted Parkwood's counsel to proceed in this manner, in the interest of saving time and on the basis that testimony is as reliable as affidavits. However, the Court desires to note at this time that it is preferable on summary judgment motions to proceed by way of affidavit. The summary judgment procedure is not to be used as preliminary trial, or demonstration of "conclusive proof" of certain facts. Rather it is a mechanism for showing that as to certain facts there is *no* genuine dispute and that on these facts the moving party is entitled to judgment as a matter of law. The Court's role in summary judgment proceedings is not to resolve issues of fact, but merely to pinpoint those facts which are not at issue. Presentation of affidavits, rather than testimony, would have permitted the Court to perform its task more efficiently. In disposing of the present motion, the Court will rely only on those facts as to which there appears no genuine dispute, as is required by Civil Rule 56.

Upon the pleadings, depositions, testimony and documents submitted, the Court finds the following facts to be undisputed as between the parties to this motion:

1. On February 9, 1964, plaintiffs MacLean and Gordon had patronized the Howard Johnson Restaurant which is owned and operated by defendant Parkwood, Inc., near the Portsmouth Traffic Circle. They left the restaurant, entered their car, and with plaintiff MacLean driving, proceeded in a southerly direction, away from the restaurant building. Some distance from the restaurant, they encountered a fork in the road, and took the branch to the left. This route led them onto the Route 1 By-pass, a divided highway, where they discovered they were travelling southerly on the north-bound lanes. A collision with another car followed.

2. Defendant Parkwood's restaurant formerly occupied another site, to the north of its present location. The State of New Hampshire required the old location for highway reconstruction and entered into an agreement with Parkwood in 1949 (hereinafter referred to as the Relocation Agreement), which set forth the mutual rights and obligations of the parties incident to the shifting of the restaurant site.

3. At its present location, Parkwood's restaurant is bounded on its west side by property owned by the State. On this land is the road which was used by plaintiffs in departing from the restaurant, and on the other side of the road is a parking area which, though on State land, is used by Parkwood's patrons. Defendant Parkwood had in the past plowed the road in front of the restaurant in winter, had provided a policeman to direct parking in the summer months and had erected flood lights in the parking area to illuminate its restaurant.

4. The road on which plaintiffs departed from the restaurant is entirely on State property and is classified as a public highway by the State. The road generally occupies the same location as did the so-called "old by-pass" before reconstruction of the highways in the vicinity. For convenience, the Court will refer to it as "the Road."

The Road describes an arc terminating at Woodbury Avenue to the northeast and at Route 1 to the southwest. According to plans and aerial photographs provided to the Court, Parkwood's restaurant and a motel to the south of it are the only abutters with access to the Road. South of the motel, a local street, known as Boyd Road, takes off from the easterly side of the Road.

The fork in the Road, at which plaintiffs took the left branch, lies south of the

entrance to Boyd Road, some 400 feet south of the front door of Parkwood's restaurant and about 175 to 200 feet south of the southwest boundary of Parkwood's property. Like the rest of the Road, the fork is on State property and was constructed by the State.

5. Plaintiffs MacLean and Gordon did not request any travel information or direction from defendant Parkwood, nor was any offered to them. Parkwood at no time erected signs on or off its property to direct the flow of traffic in the area. Such signs as existed for this purpose were erected by the State of New Hampshire on or adjacent to the Road.

On these facts, the Court must determine whether defendant Parkwood is entitled to judgment as a matter of law.

The Court concludes that there are no genuine issues of material fact bearing on the existence or non-existence of a legal duty of defendant Parkwood to these plaintiffs. Analysis of plaintiffs' complaints and other papers they have filed indicates that the particular hazardous condition of which they complain, which they assert confused them and which they say led to the collision, existed at the fork in the Road and caused them to take the left branch of the fork. It is clear that this fork lay on State land some distance beyond defendant Parkwood's legal boundaries. The facts also indicate that while Parkwood may have exercised some dominion or control over part of the State property immediately adjacent to the restaurant, none was exercised over the site of the fork in the Road. Parkwood did not construct or maintain the fork, nor did it erect any traffic signs near it. The undisputed facts also show that in this case, there was no active misinformation or misdirection given by Parkwood to plaintiffs.

Hence in this case, Parkwood's duty to plaintiffs, if any, with respect to hazards beyond its legal boundaries cannot stem from any possession or actual assertion of control over the situs of hazard. Parkwood's duty in this case cannot arise from creation of the hazard by Parkwood, nor may it rest on an active misdirection on Parkwood's part. Liability vel non of Parkwood to these plaintiffs, therefore, depends on whether in this case the law imposes an affirmative duty on Parkwood to protect its patrons from hazards which lie beyond the geographical areas occupied or controlled by it.

It is settled in New Hampshire that an occupier of land owes a duty to his invitees to conduct his activities on the premises with reasonable care; and as to conditions on the premises, to exercise reasonable care to keep the premises reasonably safe or to warn his invitees of hazards known to him or reasonably apprehendable by him. Monier v. Belzil, 97 N.H. 176, 83 A.2d 923 (1951); Partin v. Great Atlantic & Pacific Tea Co., 102 N. H. 62, 149 A.2d 860 (1959). The Court can find no case which would indicate that in New Hampshire the law imposes on an occupier of land an affirmative duty of care beyond his premises. Accordingly, this case must be treated as one of first impression and the Court believes it is required to proceed with caution, under the Erie Doctrine, to avoid imposing a duty on defendant Parkwood which would not be imposed by the courts of this State.

A duty, in negligence cases, is an obligation of one person, which the law will recognize, to conduct himself in a certain way toward another. To state that there is or is not a duty is merely to state a result—a conclusion that the plaintiff's interests are or are not entitled to legal protection against the defendant's action or lack thereof. With this in mind, the Court must rely on previously decided cases and upon reason to determine whether in this case plaintiffs should be entitled to legal protection against defendant Parkwood's alleged failure to correct or warn of an asserted hazard lying on a state highway 175 to 200 feet away from its property line.

Plaintiffs' counsel has cited several cases which he contends illustrate that courts in other jurisdictions have extended a business proprietor's obligation to his invitees beyond his legal boundaries.

But none of these cases support the extension of legal obligation which is urged by plaintiffs here. True it is that some of these cases speak of the responsibility of a business enterprise for the "approaches" to its property, but close analysis of their facts reveals differences which greatly reduce their applicability to this case.

In Viands v. Safeway Stores, Inc., 107 A.2d 118 (D.C.Mun.Ct.Apps.1954), the defendant company was held to a duty to plaintiff-invitee with respect to a hazard on a publicly-owned sidewalk which lay in front of the store, between the store and a parking lot owned by the store. The sidewalk was a passageway between two portions of defendant's property, which patrons were required to use in travelling between the store and the parking lot provided for them. Of like import is Merkel v. Safeway Stores, Inc., 77 N.J.Super. 535, 187 A.2d 52 (1962), where the defendant was deemed to have "assumed control" of the public sidewalk which divided its store from its parking lot. Other cases which plaintiffs cite also imposed on storekeepers a duty to their invitees with respect to the condition of sidewalks directly in front of entrances to the store buildings. F. W. Woolworth v. Stoddard, 156 A.2d 229 (D.C.Mun.Ct. Apps.1959); Love v. Clam Box, Inc., 35 Misc.2d 436, 232 N.Y.S.2d 924 (N.Y.S. Ct., App. Term 1962); Cooley v. Makse, 46 Ill.App.2d 25, 196 N.E.2d 396 (1964). In Phillips v. Seltzer, 240 F.2d 857 (2d Cir. 1957), defendants who were lessees of a state armory were held to a duty with respect to conditions in the armory parking lot, on the grounds that they had by implication leased the parking lot also, and that by posting a policeman on the lot they had undertaken to control it. In Skelly v. Pleasure Beach Park Corp., 115 Conn. 92, 160 A. 309 (1932), defendant beach operator was held to a duty with respect to underwater hazards in the entire area it had designated as its swimming area, even though its legal boundary was at the low water mark.

In all these cases, the situs of hazard, though on public property beyond the defendants' legal boundaries, bore a special relationship to the defendants' business operations. In some of the cases, it can be said that the defendants appropriated the public property to serve their businesses, either as a passageway between portions of the premises or as part of the business itself. In the other cases, the situs of hazard lay in extremely close proximity to the doors of the business establishments and the hazards had actually been noticed by the defendants or would be encountered only by patrons of the establishments. In such situations, there might well have been occasion to deny defendants the right to hide behind their legal boundaries where slight action or vigilance on their part might have reduced or eliminated the risks.

But in this case, there seems to be no similar special relationship between the situs of the alleged hazard and defendant's restaurant. There was no actual or constructive appropriation of the fork in the Road to the use of Parkwood's business; the fork was a feature in a public avenue which happened to provide access to Parkwood's restaurant.

Neither can the Court say, on the basis of the undisputed facts, that the Road was built by the State solely for the convenience of Parkwood or that the Road's only function was to serve Parkwood's purposes. As noted, the Road occupies the same position as a route referred to by counsel as the "old by-pass." It is not a dead-end street, but connects Route 1 with Boyd Road and Woodbury Avenue. The Road might not carry the type of traffic it once did, but that fact alone would not deprive it of its character as a public thoroughfare available for general use. In the Relocation Agreement, the State merely covenanted to pave and maintain "all public road and highway areas." At most, this might imply a promise by the State not to close or abandon the Road, but it does not seem to confer on Parkwood any special right or interest in the Road itself.

These considerations, plus the fact that the situs of the alleged hazard lay at considerable distance from the nearest ex-

tremity of Parkwood's property lead the Court to conclude that responsibility should not be imposed on defendant Parkwood for conditions existing at the fork in the Road. To do so would expand the legal responsibilities of an occupier of land beyond areas indicated by the cited cases and without, in the Court's view, any compelling justification. Indeed, if such an expansion of responsibilities were to be authorized, the Court can discern no way in which geographical bounds could be imposed, so as to set qualitative geographical limits on the duties of an occupier with respect to land beyond his legal boundaries. And without qualitative limits, expanding the duties of an occupier of land would be akin to imposing unlimited duties on him.

Upon the foregoing, the Court concludes, on the basis of the undisputed facts, that defendant Parkwood owed plaintiffs no affirmative duty of care with respect to conditions at the fork of the Road, south of Parkwood's property. Accordingly, Parkwood's motion for summary judgment should be granted and judgment entered in its favor.

It is so ordered.