Marshall STEWART, Jr.,
Plaintiff-Appellant-Cross-Appellee,

v.

RCA CORPORATION,
Defendant-Appellee-Cross-Appellant.

Nos. 85–2626, 85–2670.

United States Court of Appeals,
Seventh Circuit.

Argued April 7, 1986.
Decided May 12, 1986.

Timothy A. Rowe, Austin Rowe & Hamilton, Indianapolis, Ind., for plaintiff-appellant-cross-appellee.

Michael A. Blickman, Ice, Miller, Donadio & Ryan, Indianapolis, Ind., for defendant-appellee-cross-appellant.

Before CUDAHY, POSNER, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Marshall Stewart was an industrial relations representative at RCA's plant in Marion, Indiana, until he was laid off on November 30, 1982. He filed this suit on October 16, 1984, maintaining that RCA discriminated against him on account of race, in violation of 42 U.S.C. § 1981. RCA filed affidavits of Stewart's supervisor and co-workers asserting that RCA had notified Stewart in August 1982 of the impending layoff. Because the date of notice rather

than the date of the layoff is the important one for purposes of the statute of limitations, see *Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981); *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), and because a plaintiff has two years to file suit in Indiana under § 1981, *Movement for Opportunity v. General Motors Corp.*, 622 F.2d 1235, 1238 (7th Cir.1980), RCA insisted that Stewart had filed too late.

## I

This case has become a procedural mess because, instead of answering the complaint and moving for summary judgment, RCA attached its affidavits to a "motion to dismiss" that was filed before the answer. (RCA has yet to answer the complaint.) The "motion to dismiss" should have been left in the word processor. The complaint stated a claim for relief, and it did not self-destruct on reading. The complaint is silent on when Stewart first learned of the layoff.

Stewart responded to the motion to dismiss in January 1985 by pointing out that the suit had been filed within two years of the layoff. He did not file an affidavit setting out a contrasting view of when he learned he would be laid off. The parties discussed the legal significance of the August and November dates. On February 15, 1985, after RCA had filed its reply brief, Stewart filed an affidavit saying that he had been told in August only that a layoff was a "possibility" and that RCA was "working on other things." The position that the notice in August 1982 was ambiguous did not appear in Stewart's papers opposing the motion to dismiss. Stewart followed up with an amended complaint, filed on February 18, adding allegations of discriminatory failures to train, promote, and rehire after October 18, 1982.

The affidavit created an issue of fact, and RCA filed a supplemental brief supporting its motion to dismiss. It also asked the district judge to treat its papers as a motion for summary judgment and to hold a hearing under Fed.R.Civ.P. 43(e) to re-solve the factual dispute. This rule provides that when a "motion is based on facts not appearing of record ... the court may direct that the matter be heard wholly or partly on oral testimony or by deposition."

Stewart's response insisted that the circumstances of the affidavit's filing are irrelevant; the affidavit created a dispute about a material issue, and that is that. The response did not comment on RCA's request for a hearing under Rule 43(e). On April 11 the district judge entered an order stating: "an evidentiary hearing on said motion [to dismiss] should be heard before the below undersigned and, as matters outside the pleadings have been presented to the Court, said motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." The court set the hearing for May 2. Stewart did not protest. The hearing took place as scheduled. Five witnesses testified for RCA; Stewart and another witness testified for Stewart. Stewart's attorney addressed the court at the beginning of this hearing. Counsel spoke exclusively to the merits; he did not ask the judge to call off the hearing.

On August 28, 1985, the court entered judgment for RCA. It denied Stewart leave to file an amended complaint, without stating reasons. It resolved the question about the period of limitations by assessing the credibility of the seven witnesses at the hearing. Calling Stewart's testimony "vague," the judge concluded that Stewart knew before October 16, 1982, "that he was definitely going to be laid off." Stewart had told the Indiana Civil Rights Commission, when pursuing administrative remedies, that the layoff had been announced at the end of September. Other employees in Stewart's position testified that they knew that the decision to lay them off was final, although the date of the layoff was uncertain. The court stated: "Plaintiff's testimony to the contrary appears to be little more than an afterthought designed to save the case from dismissal."

## II

RCA's motion to dismiss called for the court to decide legal issues raised

by the complaint, and this complaint was sufficient. The motion to dismiss was the wrong way for RCA to raise the timeliness of the complaint. Cf. *McLain v. Real Estate Board of New Orleans, Inc.*, 444 U.S. 232, 246–47, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980). Summary judgment was the right way, and the district court treated the motion to dismiss as one for summary judgment. But a judge may not assess the credibility of witnesses to decide a motion for summary judgment. This follows from the fact that the court may grant the motion only if there is "no genuine issue as to any material fact" (Rule 56(c)). See *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). The date on which Stewart first learned that his layoff is a "material fact" by any definition. A disagreement among live witnesses—Stewart and RCA's witnesses gave contradictory renditions of what Stewart had been told and when—is as much a "genuine issue" as a court ever sees. A court might be able to find a witness incredible as a matter of law if he had told a different story under oath before recognizing the legal significance of the truth, or if the current story were irrefutably contradicted by documentary evidence. *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361 (8th Cir.1983). Yet there were no documents—all of RCA's communications to its employees were oral—and Stewart's complaint to the administrative tribunal said that he had been told about the layoff in September but did not discuss the degree of specificity of the communication, which became the central issue in this case.

The district judge stated that under Rule 43(e) the court may "receive *and weigh*" oral and written evidence, quoting and adding emphasis to *Shaffer v. Coty, Inc.*, 183 F.Supp. 662, 665 (S.D.Cal.1960). If this were right, it would be the end of the difference between summary judgment and trial; indeed it would be the end of the jury trial. All a judge would have to do is identify a dispositive issue, set a hearing under Rule 43(e), and resolve all factual disputes. This is not right. Rule 43(e) has

more limited roles, which do not include hearings of the sort held in this case.

A judge decides many motions. A motion to dismiss for want of jurisdiction is decided by the court alone. So, too, with motions to quash subpoenas and motions for new trials, two among the many for which Rule 43(e) was designed. See 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2416 (1971). A court may choose among methods for gathering the evidence, when it will resolve all factual disputes. Rule 43(e) gives the judge the full menu—oral testimony, depositions, affidavits, and documents. He may use the one best suited to the occasion. A judge hearing a motion for summary judgment has no similar right to decide *which* evidentiary materials are the best ones for resolving a disputed question of fact; the judge may not resolve the dispute at all. The power to select among kinds of evidence does not imply a power to resolve disputed questions of fact. That power must be found outside Rule 43(e).

Although Rule 43(e) does not say expressly that the judge may take evidence in open court in order to pass on a motion for summary judgment, and although Rule 56(c) suggests that the decision should be made on affidavits and documentary evidence, several courts have held that because Rule 43(e) mentions "motions" in general it covers motions for summary judgment in particular. E.g., *Walters v. City of Ocean Springs*, 626 F.2d 1317, 1321 (5th Cir.1980); *Bufalino v. Michigan Bell Telephone Co.*, 404 F.2d 1023, 1029 (6th Cir.1968), *cert. denied*, 394 U.S. 987, 89 S.Ct. 1468, 22 L.Ed.2d 763 (1969). The power to call for oral testimony has advantages. It may be quicker for the court to elicit testimony in open court than for the parties to depose the witness, use the deposition as the basis of an affidavit, and hope that the affidavit covers everything the judge will find important. An oral exchange may get to the nub more quickly, and it also may show up omissions and weaknesses without the need for an ex-

tended series of counter-affidavits and sur-replies.

Yet oral testimony also could waste a lot of everyone's time. Because the judge may not evaluate the credibility of the witnesses, the principal advantage of oral testimony is unavailable in hearings under Rule 43(e) on motions for summary judgment. If there is no disputed issue, a few affidavits should show that. Mammoth cases have ended in summary judgment, e.g., *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, — U.S. —, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); limited oral exchanges may focus the disputes and send them on their way. In the run of things, however, oral testimony under Rule 43(e) will be redundant. Because the judge may not resolve evidentiary disputes, he will do the same thing after hearing the testimony he should have done after reading the affidavits; if the judge denies the motion the same witnesses will need to reappear for the trial, and if he grants the motion the witnesses did not need to appear at all. Either way the witnesses appear too many times. The litigants, their counsel, the witnesses, and the judge all will be the worse for the experience. One trial per case is enough. Rule 43(e) hearings on motions for summary judgment therefore should be rare. See *MacLean v. Parkwood Inc.*, 247 F.Supp. 188, 190 (D.N.H.1965), *aff'd*, 354 F.2d 770 (1st Cir.1966); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2723 at 62 (2d ed. 1983). This case is not one of those rare occasions.

Our problem, though, is not that the judge called a hearing without sufficient reason. It is that he resolved a factual dispute on a motion for summary judgment. That the court had heard all of the pertinent evidence did not authorize the judge to resolve the dispute—unless the judge was to be the finder of fact for the case as a whole. Perhaps he was. Stewart's complaint did not request a jury trial. If the judge was entitled to resolve disputes at trial, he was entitled to try a single issue under Fed.R.Civ.P. 42(b).

There is little point in holding a full trial if a surgical approach can cut away needless disputes. A judge on top of a case can identify dispositive issues, and often these issues can be tried quickly and economically. Thoughtfully used, the trial limited to a single issue can assist litigants, witnesses, and courts alike. *MCI Communications Corp. v. AT & T*, 708 F.2d 1081, 1166–68 (7th Cir.), *cert. denied*, 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983). The statute of limitations is a prime candidate for a limited trial under Rule 42(b), both because the issues may overlap very little with the merits of the case and because the potential savings are greatest when a case is put to death at an early stage. *Gordon v. National Youth Work Alliance*, 675 F.2d 356, 360–61 n. 3 (D.C. Cir.1982).

This case, however, hardly was ready for a bench trial limited to a dispositive issue. RCA has yet to answer the complaint. There has been almost no discovery. A motion for leave to file an amended complaint was pending at the time of the hearing. Although Stewart did not ask for a jury trial in the complaint, there was still time to do so. The demand for a jury trial may be filed within "10 days after the service of the last pleading directed to [the] issue." Fed.R.Civ.P. 38(b). A plaintiff therefore may request a jury trial anytime before the eleventh day after the defendant answers the complaint (or the plaintiff answers a counterclaim or other pleading adding a new issue to the case). Compare *Communications Maintenance, Inc. v. Motorola, Inc.*, 761 F.2d 1202, 1208–09 (7th Cir.1985), with *Dasho v. Susquehanna Corp.*, 461 F.2d 11, 22 (7th Cir.), *cert. denied*, 408 U.S. 925, 92 S.Ct. 2496, 33 L.Ed.2d 336 (1972). Because RCA has not answered the complaint, Stewart's 10 days have not started to run. See *Windsurfing International, Inc. v. Ostermann*, 534 F.Supp. 581, 585–86 (S.D.N.Y.1982), a case just like this one in which the court found a demand for jury trial timely even though served months after a motion to dismiss had been filed. The parties have assumed

that the time Stewart's claim accrued is one that would be resolved by the jury, if there should be a jury trial; we shall do likewise. See *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387–88 (10th Cir. 1985); *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 242 n. 2 (2d Cir.1984); cf. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). The district judge therefore was not—not yet, anyway—the finder of fact entitled to segment the issues and hold a limited trial.

■ The right to a jury trial may be forfeited as well as waived, however. The failure to assert the right in a timely fashion surrenders it. Fed.R.Civ.P. 38(d). The right also disappears if all parties entrust the resolution of factual issues to the court without objection. A judge may try a case by consent, and the consent may be implicit as well as explicit. *May v. Evansville-Vanderburgh School Corp.*, 787 F.2d 1105, 1115–16 (7th Cir.1986), is an example. The court granted summary judgment after reviewing affidavits and depositions. It was plain that the judge drew some important inferences in favor of the party seeking summary judgment; we said that this ordinarily would require reversal; yet because both parties had acquiesced in the process that led to these inferences, we concluded that the district judge was entitled to weigh the evidence rather than just identify disputed issues. Because the right to a jury trial may be lost by inaction, it is not important to stand on ceremony, cf. *Ellingson Timber Co. v. Great Northern Ry.*, 424 F.2d 497, 499 (9th Cir.), *cert. denied*, 400 U.S. 957, 91 S.Ct. 354, 27 L.Ed.2d 265 (1970) (implicit consent to bench trial). More, a party ought not be able to try an issue without risk, reveling in his victory if he wins but holding in reserve if he loses an argument that the issue should not have been tried at all. The pleadings may be amended to conform to the course of proceedings, Fed.R.Civ.P. 15(b), and one possible amendment is an amendment foreswearing trial by jury.

■ Although the case is close, we conclude that the time at which Stewart learned he would be laid off was tried to the court by consent. RCA asked for a hearing under Rule 43(e) to resolve a factual dispute. Stewart's reply did not object to that request (although it did object to a grant of summary judgment). The district court set the matter for a hearing, signalling an intent to resolve the dispute with live testimony rather than affidavits; Stewart's lawyer did not object. Though the district court called the hearing one under Rule 43(e), the labeling error did not take Stewart by surprise. He showed up with a witness (in addition to himself) and did not pronounce shock when RCA showed up with five witnesses. To the contrary, Stewart's counsel made an opening statement summarizing what he expected the testimony would show. Although at the end of this statement counsel repeated the refrain that summary judgment is improper, he did not ask the district court to listen to Stewart and then send everyone home, which would have been the proper course at a hearing limited to testing the completeness of Stewart's affidavit of February 15. Even in this court Stewart's (new) counsel waffled when asked whether he objected to the proceeding as a partial trial. Counsel occasionally said no, stating that Stewart protested only the use of this hearing to resolve issues newly raised in the amended complaint; only after considerable questioning did counsel assert that he now objected to the district judge's treatment of the hearing as a trial on Stewart's knowledge of the layoff.

■ The important point is that Stewart's counsel never told the district court that he objected to the turn the proceedings had taken. Counsel did not tell the judge that he planned (at the appropriate time) to ask for a jury trial and therefore did not want the judge to resolve a dispositive issue in a partial bench trial. Stewart has yet to ask for a jury trial, and for all we can tell a reversal of this case would send it back for a second hearing before the same judge, with the procedure tidied

up but nothing else different. We conclude that a litigant who has not asked for a jury trial, and who makes a full evidentiary presentation without protest, implicitly consents to a resolution of the disputed issue in a partial bench trial under Rule 42(b). Explicit consent is preferable to implicit, yet although we trust the district judge will not often accept implicit consents, what happened here was enough to turn the proceeding into a partial bench trial.

■ If the hearing was a partial bench trial, then the district court's conclusions must stand unless clearly erroneous. They are not. Stewart's supervisor testified that he told Stewart in no uncertain terms before October 16, 1982, that he would be laid off. Three of Stewart's fellow workers testified that they had been told the same thing. One of these workers went on a job-hunting trip with Stewart before October 16, and they discussed prospects of finding work at other RCA plants without suggesting to each other that they might be kept on where they were. The district court was entitled to conclude that by October 16, 1982, only the date of the layoff (which had been postponed once) was uncertain. The conclusion was fortified by the fact that until February 15, 1985, Stewart had not suggested—to the Indiana Civil Rights Commission or to the court—that there was any uncertainty; he had argued instead that the date of the layoff was all that mattered; only on learning from counsel for RCA that this is incorrect did Stewart claim that there had been uncertainty. This new tale may have been enough to stave off summary judgment, but it is not enough to make a contrary finding after a bench trial clearly erroneous.

### III

■ Stewart was nonetheless free to litigate events after October 18, 1982, and he tried to do this. His amended complaint said that after October 18, 1982, and before the layoff on November 30, RCA failed to train or promote Stewart or increase his salary, which (the complaint asserted) RCA did for similarly situated white employees. Paragraph 8(b) of the amended complaint also alleged that RCA violated § 1981 by not recalling Stewart within two years of the layoff, "while similarly situated caucasians received favorable treatment." Assertions of this sort state claims for relief. *American Nurses' Association v. Illinois*, 783 F.2d 716, 724–29 (7th Cir.1986); *Caldwell v. National Association of Home Builders*, 771 F.2d 1051 (7th Cir.1985). We find it hard to imagine RCA diligently training, promoting, and raising the salaries of white industrial relations representatives just a few days away from layoff, but *if* RCA did this, and intentionally did not do the same for Stewart because of his race, that would violate the statute. So, too, would a discriminatory recall—a more plausible contention.

■ The district court denied Stewart leave to amend the complaint. It did not say why. Stewart did not say why he *asked* leave, because Fed.R.Civ.P. 15(a) gives every plaintiff one free amendment, provided plaintiff amends before the defendant files an answer. We repeat that RCA has yet to answer the complaint, so Stewart is entitled to amend "as a matter of course". *Thomas v. Pate*, 493 F.2d 151, 162 (7th Cir.), *vac. on other grounds*, 419 U.S. 813, 95 S.Ct. 288, 42 L.Ed.2d 39 (1974). He did not lose his right to amend the complaint by asking leave; the district court was obliged to grant this unnecessary request. *Peckman v. Scanlon*, 241 F.2d 761 (7th Cir.1957).

■ RCA does not defend the district court's denial of leave to amend. It argues, instead, that the district court adjudicated the complaint fully at the hearing. RCA is wrong. Its motion to dismiss (and the accompanying brief and affidavits) did not mention promotion, recall, and the like; Stewart was not on notice to respond; the district judge did not mention any of these matters in his opinion. RCA is effectively asking us to grant summary judgment on the basis of the record made at the hearing, a hearing held before significant discovery, a hearing at which Stewart was not called

on to present evidence supporting his claims on the merits.

A plaintiff may plead himself out of court by pleading facts sufficient to establish that he cannot prevail, but Stewart did not do this. The complaint is almost barren of facts. The allegations of failure to promote and train are fanciful but not self-contradictory. The allegation of failure to rehire has a weakness; it asserts that RCA rehired "similarly situated" people, and the three industrial relations specialists laid off with Stewart testified—Stewart does not deny—that none was rehired. RCA asserts that it hired no new people for similar positions. At oral argument Stewart's new lawyer insisted that Stewart had more training and greater skills than the other three people laid off at about the same time, and counsel said that Stewart should have been rehired for a job other than "industrial relations representative." A claim of this sort is not clearly articulated in the amended complaint, but perhaps a liberal reading of the complaint comprises claims of this category. A court should give a reasonably tolerant reading to complaints. See *American Nurses', supra*, 783 F.2d at 723–24, 727. Such a reading leaves room for Stewart to contend that but for his race, he would have been rehired (or hired to a position at RCA he was especially suited to fill) during the two years after his layoff.

The course of this litigation does not give us confidence that Stewart can prove his claims. Several seem overdrawn, and the fact that RCA rehired none of the other people laid off at the same time suggests that Stewart's problem is that he was treated the *same* as RCA's white employees. All the same, Stewart is entitled to try, if after reflection and study he and his counsel conclude there is some basis for the claims. See Fed.R.Civ.P. 11.

### IV

After Stewart filed his affidavit on February 15, RCA requested sanctions under rule 56(g), arguing (in the words of the Rule) that the affidavit had been "present-

ed in bad faith or solely for the purpose of delay". RCA pointed out that the affidavit was filed after the closing of the briefs, was not notarized, and was dated January 28, two days before the date of Stewart's brief in opposition to RCA's motion to dismiss. The affidavit created a factual issue for the first time, after RCA's motion and reply brief had demonstrated that the date of the layoff was not (as Stewart had supposed) the critical date. Stewart insisted that the affidavit had been meant to accompany the brief; RCA replied that the brief did not refer to an affidavit, and it is a tad unusual to attach to a brief an affidavit that is not mentioned anywhere in the text. As the district court observed, "Nothing in this affidavit relates in any way to arguments [Stewart] advanced in his January 30 response to the motion to dismiss.... Facially there is absolutely no connection between the affidavit and the response."

Rule 56(g) authorizes sanctions only "[s]hould it appear to the satisfaction of the court" that the affidavit was presented in bad faith or to obtain delay. The judge was not satisfied. He wrote: "While the circumstances surrounding the introduction of this affidavit are very questionable, the Court cannot definitely say that [Stewart] acted in bad faith or attempted to delay matters." The judge speculated that counsel's inadequate preparation, rather than Stewart's bad faith, may have been to blame.

Decisions of this character are reviewed under a deferential standard, see *Wisconsin Real Estate Investment Trust v. Weinstein*, 781 F.2d 589, 597 (7th Cir. 1986); *In re TCI Ltd.*, 769 F.2d 441, 448 (7th Cir.1985). The district judge heard Stewart and his lawyer; the judge as master of this litigation is in the best position to decide why the affidavit was filed as and when it was. We are not disposed to upset that decision.

The judge's reasoning is not airtight. If the affidavit was the result of shoddy work by the lawyer, then sanctions may be imposed on the lawyer under Rule

11 or 28 U.S.C. § 1927. The district judge quoted our observation in *In re TCI, supra,* 769 F.2d at 442, that "[l]awyers sometimes file first and think later" as if that were a reason not to award sanctions. We meant that language as a description of when sanctions under § 1927 are in order. Rule 11 *requires* lawyers to think first and file later, on pain of personal liability. See *Thornton v. Wahl,* 787 F.2d 1151 (7th Cir. 1986).

Stewart's new lawyer suggested at oral argument that his old lawyer might be required to pay RCA's expenses of defending against the affidavit. That's easy for him to say; Stewart's old lawyer was nowhere in sight. RCA did not invoke Rule 11 or § 1927 in the district court, and although we have the power to award fees on our own initiative for improper tactics in this court (see *Thornton* ), we do not lightly penalize the performance of counsel elsewhere when neither the judge nor a party has raised the issue. So without endorsing the district judge's reasoning, we conclude that he did not abuse his discretion under Rule 56(g) and was not required to raise Rule 11 or § 1927 by himself.

The judgment is therefore affirmed to the extent it holds Stewart's challenge to his layoff barred by the statute of limitations and declines to award sanctions under Rule 56(g). The remainder of the judgment is reversed, and the case is remanded for further proceedings consistent with this opinion. The parties shall bear their own costs in this court.